# MAY *v.* MAY.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 269. Argued April 2, 5, 1897. — Decided May 10, 1897.

The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised, whenever such a state of mutual ill-feeling, growing out of his behavior, exists between him and his cotrustee or the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent them from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated.

A testator devised all his estate to his wife and a son, in trust to pay to the wife one third of the income of the real estate for life, and one third of the personal property absolutely; to divide the income of the other two thirds of the estate, after paying his debts and cancelling existing mortgages, among his children and their issue; and in certain circumstances to sell or mortgage the real estate, if necessary; the two trustees to exercise jointly all the powers conferred, except that the son should manage the real estate, collect the rents thereof, pay the taxes and other expenses thereon, and render monthly accounts to the wife; and gave the other children, "for good and sufficient cause," and with the widow's concurrence, power "by their unanimous resolution" to remove him from his office of trustee, and to appoint another person in his stead. *Held,* that the other children, with the concurrence of the widow, had power to remove him, for what they determined to be good and sufficient cause, subject to the jurisdiction of a court of equity to restrain abuse of the power; and that his removal from the office of trustee terminated his authority to manage the real estate.

The filing of a bill by a trustee under a will to obtain the instructions of a court of equity in the execution of his trust does not suspend a power of removing him given to the beneficiaries by the will; but only subjects their action to the supervision and control of the court.

Upon a bill in equity by a trustee for instructions in the execution of his trust, the court will not decide questions depending upon future events, and affecting the rights of parties not in being, and unnecessary to be decided for the present guidance of the trustee.

Under a will by which the testator devises and bequeathes all his estate in trust to pay to his widow one third of the net annual income of the real estate during her life, and one third of the personal property absolutely, and to divide the income of the estate, with the exception of her thirds,

after paying his debts and cancelling existing mortgages, among his children, the widow is entitled to a third of the income of the real estate, deducting taxes, insurance and repairs, but without any deduction for interest on debts or mortgages.

THIS was an appeal from a decree of the Court of Appeals which affirmed a decree of the Supreme Court of the District of Columbia, removing the appellant from the office of trustee under the will and codicil of his father, Dr. John Frederick May, of Washington, in the District of Columbia, who died there May 1, 1891, leaving a widow, Sarah Maria. May, and six children, William and Frederick and four daughters, all of age; a large estate, consisting mostly of real estate in the city of Washington; and a will and codicil, both of which were duly admitted to probate.

By the will, dated February 4, 1890, he devised and bequeathed all his estate, real and personal, to his wife, and her heirs and assigns, upon the following trusts: 1st. That she should receive one third of the net annual income of his real estate during her life, one third of his personal property absolutely, and the use for her life of his dwelling-house in Washington. 2d. That his estate should be kept intact and undivided while any of his children lived; and the rents and profits, with the exception of his wife's thirds, be applied to the payment of his debts, and especially to the cancelling of any incumbrance or mortgage existing at the time of his death; and, after full payment and cancellation of such debts and incumbrances, be equally divided among his children. 3d. That any part of the estate might be sold by the trustee, if manifestly for the benefit of his heirs, and the proceeds reinvested in real estate, or in mortgages of a particular kind; and that such parts of the estate, as should at the time of his death be subject to mortgages, might, upon the expiration of such mortgages, and if the trustee should be unable to pay or cancel them, be remortgaged. 4th. That, upon the death of any child leaving issue, its share of the rents and profits should go to its issue. The testator also gave his wife "the power to appoint a trustee to succeed her should she deem it best at any time to do so"; appointed her executrix of his will; and

directed that she should not be required to give bond as trustee or as executrix.

On December 17, 1890, the testator gave William May a power of attorney to lease or rent his real estate in the city of Washington, to recover possession of the same, and to collect the rents thereof.

The codicil was dated March 27, 1891, and, omitting the formal parts, was as follows:

" I hereby appoint my son, William May, cotrustee with my wife, Sarah Maria May, my said son and my wife to have and exercise the powers and authority in my said will mentioned and created,. except as hereinafter otherwise directed. It is my further wish, and I hereby will and direct, that my said son, William May, shall take charge of my real estate (except my present dwelling house, which shall be and remain in the exclusive charge of my wife during her life) and care for and manage the same for the best interests of my said estate, and in accordance with the terms of my said will; and he shall collect the rents and income of my said real estate, and pay the lawful taxes and assessments, and other expenses thereon, and shall keep the same in good repair. It.is my will, and I so direct, that the taxes, insurance and repairs of my said dwelling-house shall be paid out of the general income of my other real estate.

" For the said service of my son, William May, in caring for and managing said estate, and for collecting the rents and paying the taxes and assessments, and other services, as hereinbefore directed, he shall and may retain from money so collected, as his compensation, a commission equal to five per centum of the amount of money by him collected from said estate ; and the said William May shall render to my said wife full and true accounts of the rents by him collected, and of the disbursements by him made in the execution of this trust, such accounts to be rendered each and every month, and shall be accompanied by the vouchers for such disbursements. After the death of my wife. said accounts shall be rendered to my other heirs. It is my will that no commission shall be paid to my wife, as a trustee.

"I hereby further will and direct that, for good and sufficient cause, my other heirs, with the concurrence of my wife if she be living, shall have and they are hereby given the power, by their unanimous resolution, to remove my said son, William May, from his office as such trustee, and to appoint another person in his stead.

"It is my wish that neither of my said trustees shall be required to give a bond or other security in reference to the execution of the trusts created by my said will or this codicil."

On May 2, 1892, before the estate had been fully administered, William May, as "trustee of John Frederick May, deceased, and in his own right," filed in the Supreme Court of the District of Columbia a bill against his mother, brother and sisters, to obtain the instructions of the court as to the execution of the trust, and especially upon the effect of the omission of the will to dispose of the principal of the estate after the termination of the trust, and upon the question whether the widow was entitled to a full third of the income without allowing for or deducting the interest upon outstanding mortgages.

On July 5, 1892, answers to the bill were filed in behalf of all the defendants; and on September 28, 1892, the plaintiff filed a general replication.

On November 25, 1892, an instrument was drawn up, purporting to be a "deed, declaration and resolution made" by the four daughters and by Frederick May, and by the widow joining therein as evidence of her concurrence, reciting the clause of the codicil authorizing the removal of William May from his office as trustee and the appointment of another person in his stead; and further reciting that "good and sufficient cause exists for the exercise of such power of removal and substitution, for a number of reasons," some of which, without admitting it to be obligatory to state them, were stated to be that he had failed to render full and true accounts, as required by the codicil; that he made excessive and improper charges against the estate; and that "by his intolerably domineering and disagreeable manner in discussing

the affairs of the trust with his cotrustee, displays of anger when questioned, and attempts to browbeat legitimate opposition and criticism, he has compelled said cotrustee to decline any direct communication with him upon business matters, and she is obliged to employ an expert accountant to examine and report upon the monthly accounts of said William May, and act as her representative in relation to the affairs of the trust." The instrument concluded with the statement that therefore the four daughters and Frederick May, with the concurrence of the widow, "have unanimously resolved, and do hereby resolve, that said William May be and he is hereby removed from his office as trustee or cotrustee under the said codicil and the will of said John Frederick May, deceased, and further that they, the declarants aforesaid, by their unanimous resolution, have appointed and do hereby appoint William H. Dennis, of Washington, D. C., trustee in the stead of said William May, removed, to the fullest extent of the powers conferred by said first codicil."

This instrument was signed and sealed by the widow and the four daughters in person, and by the widow as attorney in fact of Frederick May ; and was acknowledged before a notary public on November 26, 1892, by the widow and two of the daughters, and on December 3, 1892, by the other two daughters. The widow, at that time, held a power of attorney, executed July 2, 1891, by Frederick May, then residing at Valparaiso in the Republic of Chili, appointing her his attorney "to do and perform any act or acts necessary to be done or performed to protect and care for" his interest in the estate of his father.

William H. Dennis, by writing upon the resolution of removal, accepted the appointment made and the trust conferred thereby ; and on December 29, 1892, wrote and sent a letter to the plaintiff, enclosing a copy of the instrument, as well as a letter from the attorney of the defendants, requesting the plaintiff to turn over to Dennis the possession of all property of the testator in his possession or control, and all documents appertaining to the estate.

On January 3, 1893, the plaintiff filed a petition in the

cause, alleging that the widow and daughters, in undertaking to remove him from the office of trustee, and in making the resolution of removal, falsely and deceitfully pretended that the removal was for good and sufficient cause, and did not act with good faith, but from invidious motives; that they had no power to remove him, pending this suit, except upon application to the court; and that the signature of Frederick May by the widow as his attorney was nugatory and of no effect; specifically denying all the allegations of the resolution of removal; and praying for an injunction against the defendants and Dennis from claiming any right or doing any act under that resolution. On January 7, 1893, upon the plaintiff's motion, Dennis was made a party defendant to the suit; and on January 24, 1893, a temporary injunction was granted as prayed for.

On March 7, 1893, the defendants, by leave given January 21, 1893, filed a cross bill, praying that the plaintiff be decreed to surrender possession of the real estate and all moneys and documents in his charge as cotrustee to Dennis as his successor, and to settle his final account.

Frederick May, on May 8, 1893, executed and acknowledged before a notary public in the city of Washington a deed, ratifying, approving and confirming the acts of the widow in voting for and executing in his behalf the resolution of removal, and also the filing of the prior answer and cross bill in his behalf; and on June 6, 1893, personally appeared in the cause, and, by leave of court, filed a supplemental answer to the like effect.

After a filing of an answer to the cross bill, and a general replication to that answer, and other motions and pleadings not material to be stated, much evidence was taken (the substance of which is stated in the opinion of this court) and the case was heard upon pleadings and proofs before the Supreme Court of the District of Columbia; and that court, on July 31, 1894, entered a final decree, by which the injunction granted on the plaintiff's petition was dissolved; "and it appearing to the court that the heirs of John Frederick May, deceased, other than said William May, with the concurrence of Sarah

Maria May, widow of said deceased testator, proceeded rightfully and within the power conferred by the first codicil to the will of said testator in removing, by their unanimous resolution, dated November 25, 1892, for good and sufficient cause, said William May from his office as trustee or cotrustee named in first codicil, and in appointing the defendant William H. Dennis in his stead; and it further appearing to the court from the proofs that there existed good and sufficient cause why the said William May ought to have been removed from said office of cotrustee, more particularly on account of the discordant relations between him on one side and his cotrustee and all the beneficiaries of the trust except himself on the other side," it was decreed that William May within twenty days surrender possession and control of the trust property in his hands, and all leases, papers and books pertaining to the trust, and all moneys of the trust estate, derived from the collection of rents or otherwise, to the widow and Dennis as cotrustees, and that all the powers and duties originally conferred upon him by the will and codicil be vested in them; that he be perpetually enjoined and restrained from acting as cotrustee, and from interfering with their possession and management of the trust property, " without prejudice, however, to the right of said William May to apply to this court as he may be advised, in his quality as a beneficiary interested in said trust "; and that he render a full and final account of all his receipts and disbursements as cotrustee; and it was further adjudged that the widow (in addition to the other provisions for her benefit) was entitled to receive for life to her own use one third of the net income from the rents and profits of the real estate, after deducting taxes, insurance and repairs, and without any deduction for interest paid or to be paid on debts of the testator, or on any mortgages or incumbrances upon his estate.

The plaintiff appealed to the Court of Appeals, which affirmed the decree, with costs, and afterwards denied a motion to amend it so as to allow him his costs and counsel fees in the cause. 5 App. D. C. 552. Thereupon he appealed to this court.

*Mr. W. D. Davidge* for appellants. *Mr. W. D. Davidge, Jr.*, was on his brief.

*Mr. Enoch Totten* and *Mr. William Henry Dennis* for appellees.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

The important question in this case is whether William May has been rightly removed from the office of trustee under the will and codicil of his father.

As to the facts bearing upon this question, we concur, after careful examination of the voluminous record, in the conclusions expressed by the courts below in the following passages of their opinions:

In the Supreme Court of the District of Columbia, Justice Hagner said: "In the present case, the testimony clearly proves that between Mrs. May, the other trustee, and William May there exists so wide a breach that they can have no personal communication. The jealousy and unfriendliness existing before the testator's death on each side has widened into positive, distinct and most unnatural enmity. On William May's part, it has been undoubtedly increased by his mother's positive refusal to confer with him on the business of the estate, because, as she testifies, quarrels would always result from such conferences, which would be perilous to her health, and also by the terms in which she had expressed herself towards him in her pleadings and testimony in this cause and by her execution of the instrument intended to effect his removal; and, on the part of Mrs. May, that dislike has been intensified by the statements in William May's pleadings and his testimony, and perhaps more pointedly because of his introduction of the painful correspondence, many years old, between her husband and herself, and of Dr. May's letters to the plaintiff on the subject of his domestic troubles. She and all the beneficiaries have testified in painful terms that they believe him to be untrustworthy, dishonest, dictatorial and

disagreeable in manner, and incompetent as a business man. Under such circumstances, anything like free conference be-tween the trustees, or concert of action, in the proper sense of the term, is impossible.  If either is to act at all as trustee, each must pursue his or her independent way, with a certainty of differing as to the proper performance of many of the duties of the trust, if not as to all."  " This unfortunate state of feel-ing between the trustee and sisters and brother must equally prevent that peaceable intercourse that beneficiaries should enjoy with the party charged with the management of their interests in this considerable estate.  They are certainly enti-tled to confer in peace with the agent appointed to manage their affairs, and receive from him good-tempered explana-tions, and give their suggestions as to what they consider the proper steps in the management of their business, without risk of unpleasant disputes, naturally liable to increase in violence at each successive difference.  Such a state of affairs would ultimately become insufferable, and most hurtful to the inter-ests of all concerned."

The Court of Appeals, speaking by Justice Morris, expressed the same view as follows : " Dissension, however, very soon arose between William May on the one side, and his mother, brother and sisters, on the other; and, as usual in such cases, the dissensions became intense and bitter.  There is in the record a painful disclosure of domestic discord which should have been avoided, and into the details of which we do not deem it necessary for the purposes of this case to enter." " As we have stated, we will not enter into any investigation of the causes of dissension between the parties, or of the rea-sonableness or unreasonableness of their respective positions. That there is dissension, bitter and uncompromising, is beyond question.  That such dissension precludes intercourse between the parties, is their mutual declaration.  If there can be no intercourse between them, no communication of views, their joint execution of their joint trust is an impossibility.  The due execution of the trust requires concurrence of action, and consultation preliminary to action."  5 App. D. C. 555, 561.

We agree with both the lower courts in thinking it to be

unnecessary and undesirable to enter upon a discussion of the conflicting testimony, or to enlarge upon the details of the conduct and expressions of the parties.

It is sufficient to say that, while nothing is shown to justify an imputation of dishonesty against the appellant, it is indisputable that, from the time of his entering upon the execution of the trust, he treated his mother and cotrustee without due respect and consideration, and was somewhat careless and inaccurate in his accounts rendered to her; that his conduct was calculated to excite, and did excite, resentment in her, sympathy with her in his sisters and brother, and suspicion and distrust upon the part of all of them; and that, as is too apt to happen in family quarrels, the breach once made became wider and wider until there was no longer any natural, or even friendly, intercourse between the appellant and the rest of the family.

What, then, are the rules of law applicable to the case, taking into consideration the peculiar provisions of the will and codicil?

The testator by his will, dated February 4, 1890, devised all his estate to his widow in fee, in trust, to receive herself one third of the income of the real estate for life, and one third of the personal property absolutely; to divide the income of the other two thirds of the estate, after paying his debts and cancelling existing mortgages, among his children and the issue of any deceased child; and, in certain circumstances, to sell or mortgage the real estate; and gave her power to appoint a trustee to succeed her, and appointed her sole executrix. Some ten months afterwards, on December 17, 1890, he gave his son William a power of attorney to lease or rent his real estate, to recover possession of the same, and to collect the rents thereof. About three months later, on March 27, 1891, he executed the codicil, by which he appointed William a cotrustee with the widow, the two together to have and exercise all the powers created by the will, except that William alone was to take charge of, care for, manage and keep in repair the real estate, to collect the rents thereof, and to pay the taxes and other expenses thereon,

receiving a commission of five per cent on his collections, and rendering monthly accounts to the widow. The separate authority thus given to William was substantially that of an agent, little more than he had under the power of attorney in his father's lifetime. The powers of paying and cancelling mortgages, and of distributing income among the children, and of making sales or new mortgages of the real estate, be-. longed to him and the widow jointly as trustees; and were active trusts, requiring mutual consultation and the exercise of discretion in carrying them into execution.

The clause in the codicil, which gave his other heirs, "for good and sufficient cause," and with the concurrence of the widow, power "by their unanimous resolution" to remove William May from his office as trustee, and to appoint another person in his stead, was evidently intended to enable them to remove him by their own act, without being obliged to resort to a court of equity. If no such power had been given them by the testator, any one of them could have applied to a court of equity, and have had the trustee removed, on proving good and sufficient cause therefor, satisfactory to the court. If the words "for good and sufficient cause," in the codicil, mean only such cause as would be deemed by a court of equity to be good and sufficient, the only effect of conferring the express power of removal would be to restrict the power of removal by requiring their action to be unanimous. This cannot have been the testator's intention. The extent of the power conferred appears to us to have been well and accurately stated by the Court of Appeals in these few words: "The power to remove their trustee was vested in the defendants to this cause. The power to determine when there was good and sufficient cause for such removal was necessarily in them also, subject to the restraining power of a court of equity against the abuse of it." 5 App. D. C. 561.

The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever such a state of mutual

ill-feeling, growing out of his behavior, exists between the trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the cotrustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated. *Uvedale* v. *Ettrick*, 2 Ch. Cas. 130; *Letterstedt* v. *Broers*, 9 App. Cas. 371, 386; *McPherson* v. *Cox*, 96 U. S. 404, 419; *Scott* v. *Rand*, 118 Mass. 215, 218; *Wilson* v. *Wilson*, 145 Mass. 490, 493; 2 Story Eq. Jur. § 1288.

A good illustration of this is afforded by the leading case of *Uvedale* v. *Ettrick*, above cited, decided by Lord Chancellor Nottingham in 1682. In that case, the plaintiff's husband, being seized of Horton and other manors, by his will devised them to his wife and Ettrick and three other persons, in trust to be sold, "and, after his debts and legacies paid, the surplus of the land to be conveyed to his heir"; and died, "having, after his marriage with the plaintiff, mortgaged Horton, so as the plaintiff was dowable of all the estate." She brought a bill in equity against Ettrick and the other three trustees and the heir — "which was to have a sale made, but principally that Ettrick might be put out of the trust." The other three trustees declined the trust. The bill alleged that the plaintiff "was drawn into agreement to release her dower" in the other manors, "and to give a bond of £4000 that, if any of the children died, she would not take administration, except they all died; after which, Ettrick turns to be the plaintiff's enemy, and divers matters are charged in the bill upon Ettrick, as if he practised to get Horton, and to be the whole manager himself." At the hearing, the plaintiff declared in court that she was content to accept dower in the manor of Horton, and to join in the sale of the rest of the land, thereby to extinguish her dower therein, "so that Ettrick might be discharged of the trust. On the other side, Ettrick insisted to be continued in the trust, and would attend a master from time to time to get

a purchaser, and to do all reasonable acts," etc. "Lord Chancellor. 'I like not that a man should be ambitious of a trust, when he can get nothing but trouble by it'; and declared that, without any reflection on Ettrick, he should meddle no farther in the trust, etc." 2 Ch. Cas. 131.

The facts of the case at bar, therefore, far from showing any abuse of the power conferred by the testator, present a state of things which would justify a removal of the appellant by a court of equity, had the will been silent upon the subject.

The filing of this bill by one trustee did not suspend the power of removal given by the will to the beneficiaries with the concurrence of the other trustee; but only subjected their action to the supervision and control of the court. *Cafe* v. *Bent*, 3 Hare, 245, 249.

The form in which their power to remove the appellant was undertaken to be executed was by a resolution in writing, declaring that there was good and sufficient cause for his removal; specifying, among other reasons, his failure to render full and true accounts to his cotrustee, and his domineering and disagreeable conduct towards her; and signed by the widow and the four daughters in person, and by the widow as attorney in fact of the other son. Whether the widow was authorized by the power of attorney from him to act in his behalf in the removal need not be considered, since he afterwards formally ratified her action, and the unanimous wish of all concerned that the removal should take place was made manifest to the court before it acted upon the matter.

The necessary conclusion is that the decree appealed from, in so far as it ordered William May to be removed from his office as trustee, was in accordance with law and justice.

The direction, in the decree, that he should surrender possession and control of the trust property, and all the leases and papers in his hands, and all moneys, whether derived from the collection of rents or otherwise, was a necessary incident of his removal and the appointment of a new trustee in his stead. The management of the real estate would have been one of the duties imposed upon the two trustees jointly by the first clause of the codicil, but for the concluding words of

that clause, "except as hereinafter otherwise directed," followed by the direction that he should manage the real estate. This duty of management was not separate from, but annexed to, his office of trustee; and after his removal from that office, he could not perform this or any other duty connected with the administration of the trust.

The question who will take the estate after the deaths of the wife and the children cannot be decided now, before those events happen, and in the absence of parties who may then be interested. Upon a bill in equity by a trustee for instructions in the execution of his trust, the court will not decide questions depending upon future events, and affecting the rights of persons not in being, and unnecessary to be decided for the present guidance of the trustee. As was said by Mr. Justice Grier, "The court has no power to decree *in thesi*, as to the future rights of parties not before the court or *in esse*." *Cross* v. *De Valle*, 1 Wall. 1, 16.

The decree, in allowing the wife one third of the net income of the real estate, deducting taxes, insurance and repairs, but without any deduction for interest on debts or mortgages, was clearly in accordance with the explicit provisions of the will, that she should receive one third of the net annual income, and that her thirds should be exempted from the payment of debts or mortgages.

That part of the decree which substitutes Dennis as trustee in the place of the appellant was not specifically objected to in argument, and we allude to it only to prevent any inference that, in affirming the decree generally, we express any opinion upon the question whether Dennis, by acting as counsel for the rest of the family throughout this suit, and supporting all the charges, whether grave or frivolous, made by them against the appellant, has so far identified himself with one side of this unhappy controversy as to make it unfit that he should hold the office of trustee under the will. That question is left to be dealt with by the court below, under the right reserved by the decree to the appellant to apply to the court as he may be advised, in his quality as a beneficiary interested in the trust.

*Decree affirmed.*