### MARCH et al. v. ROMARE et al.

(Circuit Court, N. D. Alabama, S. D. February 19, 1902.)

1. TRUSTS—REMOVAL OF TRUSTEES—DISAGREEMENT BETWEEN CESTUIS QUE TRUSTENT.

Cestuis que trustent may remove and appoint trustees, in the exercise of the power given them by the instrument creating the trust, although prior to the exercise of the power the trustee has filed a bill concerning the trust, which is still pending; but in such case the removal and substitution of trustees is subject to the approval of the court which has acquired jurisdiction of the trust, and where the power is vested in the majority, and has been exercised by them in opposition to a minority, although in good faith, and without any design to oppress, the court, before sanctioning the change, will inquire whether it will be detrimental to the interests of any of the cestuis que trustent, and especially where the trustee sought to be removed is proceeding in the discharge of a plain duty, which the minority had the right to demand at his hands.

**2. SAME.**

The trustee in a deed of trust securing bonds of a corporation, on demand of a minority of the bondholders, and being indemnified, began suit for foreclosure, and, under advice of counsel, applied for the appointment of a receiver, all of which was a duty he was required to perform by the terms of the deed, and as to which he had no discretion. This action, however, was disapproved by a majority of the bondholders, who, in the exercise of a power given them by the deed, removed the trustee and appointed others, who applied to the court to be substituted as complainants in the suit. No question was made as to the competency or good faith of the original trustee. *Held*, that since the foreclosure was a matter of right, upon which the minority were entitled to insist, and the execution of the decree therein would terminate the trust, all of which would be under the supervision of the court, which could protect the rights of all parties, it would not sanction the removal without cause of a trustee who had merely performed his duty, and the substitution of others as complainants, who owed their election to interests which were hostile to the suit.

In Equity. On motion for an injunction based on a bill in the nature of a supplemental bill to enforce the removal of defendant as trustee.

This is an original bill, in the nature of a supplemental bill, filed by March and Hoyt against Romare and others, and grows out of the litigation on the bill filed by Romare and others against the Broken Arrow Coal & Mining Company, which, briefly stated, is this: Romare is surviving trustee under a deed of trust executed by the Broken Arrow Coal & Mining Company in 1884 to secure an issue by that company of bonds, the interest upon which had long been in default. Upon demand made by one-fourth of the outstanding bondholders, and being indemnified against costs, as required by a provision of the deed of trust, he filed his bill to enforce the debt, and also prayed for a receiver pending foreclosure. Due notice of the motion for receiver was given, and the respondents to that bill were required to show cause against it on the 19th of October, 1901; but the matter was not actually heard until the 16th of January, 1902. On the 5th of December, 1901, March and Hoyt filed their petition in the case of Romare against the Broken Arrow Coal & Mining Company, alleging that a majority of the bondholders, as authorized by the deed of trust, had on the 16th day of November, 1901, removed Romare, and by like authority had appointed March and Hoyt trustees under said instrument, wherefore they prayed to be substituted as complainants, instead of Romare. On the 4th day of January, 1902, March and Hoyt filed their "original bill, in the nature of a supplemental bill," against Romare, as surviving trustee, and the other respondents in that case; reciting the proceedings commenced by Romare for foreclosure of the deed of trust; alleging that on the 16th day of November, 1901, a majority of the bondholders, exercising a power given by the deed of trust, removed Romare by an instrument in writing, and by a similar instrument had appointed March and Hoyt as successors to Romare and John H. Porter, a trustee who died several years since. The clause in the trust deed relied on to sustain these acts of the majority bondholders is as follows: "Article VIII. The trustees may, at any time, be removed by a declaration in writing signed by a majority in interest of the holders of all the bonds hereby secured, at the time outstanding. In case of the resignation, incapacity, or removal of said trustees, or either of them, the successor or successors may be appointed by the holders of a majority in interest of the bonds then outstanding, by an instrument in writing signed by them." The bill alleges proper notice to Romare of his removal, of the action by which it was effected, and the execution of the proper instruments in writing, signed by a majority of the bondholders then outstanding, appointing March and Hoyt as his successors, and offered to pay Romare the reasonable value of his services and expenses in the proper administration of the trust. Romare declined to surrender the trust, or to make any transfer to the complainants as his successors in the trust, as it

is alleged the deed obliged him to do, and has since continued to claim to be and continues to act as trustee, and to prosecute his bill. It is further alleged that March and Hoyt are entitled to conduct the foreclosure under the deed of trust, and to "manage, direct, and execute the provisions thereof," and that it is their duty to do so, and that the conduct of Romare notwithstanding his removal, if permitted to continue, would put it out of the power of orators to execute their trust, and to discharge their duty and obligations to the bondholders. The prayer is that Romare and the other defendants to the suit brought by Romare be made respondents to the present bill, and that Romare be restrained and enjoined from further proceeding with the conduct of the suit for foreclosure and for the appointment of a receiver, and from in any wise interfering with the trust estate; that he be required to transfer to March and Hoyt all interest vested in him by the deed; and that March and Hoyt be permitted and authorized by the decree of the court to proceed with the foreclosure, etc.

Knox, Bowie & Dixon, for complainants.
J. J. Willett, B. F. Abbot, and Jas. T. Greene, for respondents.

JONES, District Judge. The case is now submitted on motion for injunction against Romare. There were also argued at the same time the demurrers to the application of March and Hoyt to be substituted as trustees in Romare against the Broken Arrow Coal & Mining Company et al., and also demurrers to the supplemental bill, as well as the motion to strike it from the file; it being the understanding, in order to speed the cause, that the court, in passing upon the motion for injunction, would also indicate its opinion as to the other matters, and outline what decree it would render in term time as to them. The motion for injunction was submitted upon the same matters as those set forth in the note of testimony in the main case. The substance of the evidence has already been stated in the opinion rendered in that case.

There is no rule of law that cestuis que trustent may not remove and appoint trustees, in the exercise of the power given them by the instrument creating the trust, because prior to the exercise of the power the trustee has filed a bill, which is still pending, concerning it, or the court in any other way has undertaken jurisdiction of the trust. The exercise of such a power will be permitted or disallowed at any time as may appear to the court for the best interests of the cestuis que trustent. It is not the law, however, when the power is given in broad terms, without requiring a specification of any cause for its exercise, that the decision of a majority of the donees of the appointing and removing power cannot be questioned by the court, save in cases of fraud, oppression, or bad faith. The controlling question in every case is whether a change promotes the execution of the trust. If the court should be of opinion that the substitution is not for the benefit of the trust, it will not sanction a removal, though made in good faith and without intention to oppress. The only case, perhaps, in which the court would feel impelled to accept without question a decision appointing and removing trustees, would be where the power is lodged in the whole body of cestuis que trustent and is unanimously exercised by them. This would be only allowing all the owners of the trust property to deal with it as they thought best. But where the power is committed to the majority of the cestuis que trustent, and the minority oppose the removal, the court should always inquire not only

whether there was bad faith or oppression, but whether sanctioning the change might be detrimental to the interest of any of the cestuis que trustent. This duty becomes imperative when the majority of the cestuis que trustent remove a trustee who is proceeding in the discharge of a plain duty which the minority have a right to demand at his hands. In this case the minority bondholders, after default, had the unquestioned and clear legal right to demand of the trustee, upon giving him proper indemnity, to proceed to foreclose. He had not a particle of discretion. He would have been derelict in duty if he refrained from acting because a majority of the cestuis que trustent opposed foreclosure. The majority bondholders have no legal or moral cause of complaint against the trustee for so acting. It is not to be presumed, in a matter of this importance, that the trustee acted otherwise than on the advice of counsel, in applying for the appointment of a receiver. Indeed, the fourth article of the trust deed requires the trustee, in event of default, upon the requisition in writing of one-fourth of the bondholders, to proceed to exercise their rights, "either by taking possession of the property under the powers granted in other articles, or by suit or suits in equity or at law in aid of the execution of such powers, or otherwise, as the trustee, being advised by counsel learned in the law, shall deem most effectual." Upon the evidence, which, it is a fair inference from the attitude of the parties, was presented to him by the minority bondholders, he is not to blame for shifting the responsibility for determining whether there should be a receiver from his own shoulders to that of the court.

The case of May v. May, 167 U. S. 320, 17 Sup. Ct. 824, 42 L. Ed. 179, is much relied on to sustain the claim that this court has no right, under the circumstances of this case, to interfere with the change of trustees, or to refuse to sanction it. The language of the supreme court in that case must, of course, be measured and construed with reference to the facts with which it dealt, and the reasons for the conclusion it reached. In that case the defendant filed his bill against his mother, brother, and sisters to obtain instructions from the court as to the execution of the trust created by the will of his testator, and as to the effect of the omission in the will of provision for disposing of the principal of the estate after termination of the trust. It was apparent that active duties, involving large discretion, and requiring harmony and co-operation among the cestuis que trustent, would devolve upon the trustee long after the litigation closed; for, no matter what the decree rendered upon the bill filed by the trustee, May, it was evident that it would not terminate the trust, but would simply provide rules for its future administration by him. Under these circumstances, the lower court, the court of appeals, and the supreme court of the United States all held, on account of the "overbearing disposition" of the trustee, and his dissentions with the other cestuis que trustent, when harmony was essential, that the power of removal of the trustee, which the will gave the other heirs, with the approval of the testator's wife, and under which, by unanimous resolution, they removed the trustee, and appointed another person in his stead, was properly exercised, notwithstanding the pendency of his bill for the construction of the will, and that the court before which that matter

was pending properly sanctioned the removal and appointment under the power given under the will. In other words, the court held that the removal promoted the execution of the trust. In this case the execution of the decree of foreclosure, which, for aught that now appears, is inevitable, will terminate the rights of the parties, and leave the trustee no further duty or discretion in connection with the trust, save the distribution of money realized from the sale, and the exercise of the right to bid in the property in behalf of all the bondholders at a price not exceeding the amount of the bonds, with accrued interest and expenses of sale, if the decree does not take away these powers. This first duty one honest trustee could certainly perform as well as another. As to the other power, the court, in its decree, where the bondholders are at variance, as here, would, of course, provide that such a power should not be exercised, save at the instance of all the bondholders. This would in no wise sacrifice the rights of any of the bondholders in this respect, since, under the terms of the deed of trust, and also under the decree, if it contained proper provisions, the individual bondholder would be entitled to use their bonds, according to their pro rata value, in payment as cash upon any bid upon the property. No harm can come to the trust estate because of any lack of harmony between Romare and the majority bondholders, since there is no way in which his discretion can be exercised to their prejudice in the performance of the duties which will remain to him. The trust will be practically ended when the decree is executed. No further field of administration will be open, as in May's Case, where discordant relations between the trustee and cestuis que trustent might mar or obstruct future administration of the trust. That Romare is a man of character and business experience is not denied, and it is not charged that he is incompetent or unfaithful in the trust. He was the original choice of those who executed the trust, and has continued to discharge its duties for many years, without manifestations of want of confidence or dissent from any of the cestuis que trustent, until the dissentions and differences which have lately arisen among the bondholders as to the management of the trust property. The majority bondholders have no legal right to object to this foreclosure, and the trustee had no discretion but to proceed. It may be the misfortune of the majority that they have minority associates who are unwilling to wait until the property can be developed, and, by insistence upon a plain legal right to have a sale of the property, may entail sacrifice upon their majority associates; but "it is so nominated in the bond," and no court has power to deprive these minority bondholders of this right. What good, then, can come from relieving a trustee who is obeying the plain command of the trust, and transferring the trust and duty to another? Whatever the motive for Romare's removal, the result, if the court sanctions the act, is that a trustee who is strictly performing his duty to the minority bondholders under the trust deed is removed by the majority bondholders. Removed for what? The question, in view of the developments of the case, admits of but one answer. No court mindful of its own dignity and duty can permit litigants thus to dismiss a faithful trustee.

It is urged that the new trustees would perform their duties under

the eye of the court, and, if slothful or unfaithful, the court can compel them to do their duty. So it can. But why take chances of having to prod a lukewarm trustee? There is already a suitable trustee, loyal to the trust, who is performing its duties, which, when the final decree it is his duty to seek is rendered, will practically terminate the trust. It is therefore neither wise nor expedient to call in new trustees, who owe their election to hostile interests, which may constantly beset the trustees not to speed the performance of their duty. A change of trustees would not promote the execution of this trust, and would increase the cost and expense of foreclosure, and perhaps delay it.

A decree will be here entered denying the injunction prayed for, and counsel for Romare may draft and present decrees, to be entered in term, in conformity with this opinion, disposing adversely of the petition and the bill filed by March and Hoyt.