205 N.J. Super. 349 (1985)
500 A.2d 1076
JAMES K. WOLOSOFF, PLAINTIFF-RESPONDENT,
v.
CSI LIQUIDATING TRUST, MORTY WOLOSOFF, MILTON HENDLER, INDIVIDUALLY AND AS TRUSTEES OF THE CSI LIQUIDATING TRUST, AND IRVING B. KAHN, DEFENDANTS-APPELLANTS, AND THOMAS B. TROEHLER, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1985.
Decided October 30, 1985.
*353 Before Judges O'BRIEN, SIMPSON and SCALERA.
Ronald M. Sturtz argued the cause for appellants CSI Liquidating Trust, Morty Wolosoff and Milton Hendler (Hannoch, Weisman, Stern, Besser, Berkowitz and Kinney, P.A., attorneys, Ronald M. Sturtz and Elizabeth A. Weiler, on the brief).
Richard A. Levao argued the cause for appellant Irving B. Kahn (Shanley and Fisher, P.C., attorneys, Richard A. Levao and Thomas F. Campion, on the brief).
Paul A. Rowe argued the cause for respondent (Greenbaum, Rowe, Smith, Ravin, Davis and Bergstein, attorneys, Douglas K. Wolfson and Nancy E. Brodey, on the brief).
The opinion of the court was delivered by SCALERA, J.S.C. (temporarily assigned).
This appeal stems from the trial court's order removing defendants Morty Wolosoff and Milton Hendler as trustees of the defendant, CSI Liquidating Trust. Implicated are the legal principles to be applied in a court's forcible removal of trustees as well as consideration of the proofs necessary to properly determine that issue.
Cable Systems Incorporated (CSI) was incorporated in 1973, and operated a cable television company in southern New Jersey and was the owner of several municipal cable franchises. Ultimately, the ownership of stock was held as follows

*354
Morty Wolosoff (a defendant) 5%
Milton Hendler (a defendant) 10%
Irving B. Kahn (a defendant) 20%
Thomas B. Troehler (a defendant) 10%
Jeremiah E. Hastings 10%
Gloria Wolosoff (wife of Morty) 20%
James K. Wolosoff (the plaintiff and
 nephew of Morty) 25%
 ____
 100%

Audubon Electronics, Inc., (Audubon) was also a cable television company with franchises contiguous to those of CSI. Audubon was owned 100% by Irving Kahn (Kahn). Both CSI and Audubon were operated by substantially the same personnel and primarily utilized CSI equipment pursuant to agreement of the companies. Both CSI and Audubon eventually flourished as cable television companies. In or about 1979 and 1980 Kahn began to negotiate for the sale of both his company, Audubon, and CSI, of which he was a minority stockholder. In 1980, as a result of Kahn's efforts, Audubon and CSI entered into formal contracts for the purchase of all of their assets by The New York Times Company (Times). The price for CSI was $23,000,000 and the price for Audubon was $59,000,000.
The CSI sale agreement provided for the majority of the purchase price to be paid in installments through two non-negotiable notes totalling $3 million dollars and four negotiable notes totalling $17 million dollars. The agreement was structured to permit the Times to offset "future construction costs" against the purchase price not to exceed the $3 million dollars represented by the non-negotiable notes.
It was at the time of negotiations for the sale of CSI and Audubon that the "warfare" between the parties began. Plaintiff James K. Wolosoff, as owner of the largest percentage of CSI stock (25%), objected to the proposed sale of CSI to the Times. He believed that the price negotiated for CSI was *355 deliberately under-valued and that the price to be paid for Audubon (owned entirely by Kahn) was deliberately overstated.
The litigation commenced when plaintiff herein brought suit in the United States District Court of New Jersey against CSI, Audubon, Kahn, Thomas B. Troehler (Troehler), Milton Hendler (Hendler), Morty Wolosoff (Morty W.), Gloria Wolosoff (Gloria W.) and Jerimiah E. Hastings (Hastings). James Wolosoff (plaintiff) did not seek to "block" the sale of CSI to the Times, but instead sought damages from the individual defendants and Audubon contending that they had committed fraud, had engaged in conflicts of interest and had breached fiduciary duties in participating in the negotiation and sale of CSI and Audubon. Defendants in that suit brought a motion for summary judgment as a result of which plaintiff sought to submit to a voluntary dismissal without prejudice. The District Court Judge refused to accept the tender and ultimately entered a dismissal of the suit with prejudice subject to recommencement only upon terms and conditions. He took this course to facilitate the sale of CSI and Audubon to the Times pursuant to the agreements of sale. The closing between CSI and the Times took place as scheduled on March 2, 1981.
Soon thereafter plaintiff filed another suit against Hendler, Hastings, Troehler, Morty W., Gloria W. and CSI seeking repayment of a loan allegedly made by him to CSI and compelling payment to him of his share of the CSI sale proceeds. The defendants counterclaimed, claiming damages incurred from plaintiff's refusal to cooperate in the sale of CSI.
Judge William A. Dreier, (then sitting in Chancery), held a bench trial during which he heard testimony from plaintiff, Morty W. and Hendler as well as others. In rendering an oral opinion in which he entered judgment in favor of the plaintiff for the amount of the loan plus interest and dismissed the counterclaim, Judge Dreier commented extensively upon the lack of credibility of both Morty W., Hendler and Kahn as well as their motivations for that testimony. While he did not *356 "paint [plaintiff James Wolosoff] as the model of a credible witness", he was convinced of the legitimacy of his claim. (Judge Dreier's decision was affirmed by this court, subsequent to the filing of the instant appeal). Still pending is a counterclaim by Morty W. against James Wolosoff concerning other joint investments by them which was severed prior to trial.
The factual equation here requires mention that prior to this suit Judge Dreier had also presided over a trial in which one Coleman Finkel (the accountant for Morty W. and Hendler) had sued plaintiff to recover for his partnership interest in a hotel. During the course of that trial, Morty W. testified on behalf of Finkel. Judge Dreier adjudicated the claim in favor of Finkel and against James Wolosoff commenting unfavorably concerning the credibility of James Wolosoff in that proceeding.
Meanwhile, in order to obtain tax advantages from the sale of CSI to the Times, a "majority" of CSI stockholders voted to enter into a Liquidating Trust Agreement (Trust) pursuant to 26 U.S.C.A. § 337. Hendler, Troehler and Morty W. were appointed as trustees, despite the objection of plaintiff. The Trust agreement provided that the duties of the trustees would center around winding up the affairs of CSI in the sale of its assets to the Times. This was to be accomplished by assigning the contract with the Times to the Trust and by having the CSI shareholders exchange their stock for a proportionate certificate of ownership in the Trust. The trustees were not required to post any security bond and were entitled to receive compensation of $100 per hour for their duties as trustees. The trust agreement further provided that, "Services which any Trustee may render in any other capacity (e.g., as accountant) [would] be compensated on a quantum meruit basis." Further, the trustees were empowered to collect assets, pay obligations, and to withhold distribution of trust income to meet present or future liabilities. The trust agreement specifically provided that it was to be governed in accordance with the laws of this State.
*357 When the first non-negotiable note for 2 million dollars became due, the Times claimed a construction offset against CSI greatly exceeding that amount. At the same time, the Times claimed construction offsets against the payments due to Audubon. The trustees, on behalf of the Trust, and Kahn, on behalf of Audubon, vehemently disputed the amounts of offset being asserted by the Times. Consequently, Kahn started a suit in New York essentially seeking access to the Times' books to verify or disprove the offset construction claims being asserted. The defendant trustees joined in that suit, taking the position that in order to protect the assets of the Trust, they too would require access to such information. (Kahn and the trustees agreed to finance that litigation with Kahn paying 81.85% and the Trust 18.15%). The Times filed a counterclaim to establish its offset claims.
The defendant trustees decided that they would make no distribution of the $5,000,000 payment in light of the outstanding claims by the Times. The trustees were counselled that, should distribution be made and later the Times be successful in its claims, the trustees might be personally liable for the amount distributed. Thus, neither the plaintiff nor the other beneficiaries of the Trust received any monies from the $5 million dollar payment. It was against this backdrop of bitterness, hostility, controversy and recriminations that the present litigation was instituted pitting plaintiff as one warring faction against Kahn, Hendler, Morty W. and their alleged cohorts as the other.
Plaintiff James Wolosoff commenced this action on April 16, 1984, by filing a verified complaint and order to show cause seeking to compel payment of his proportionate share of the $5,000,000 payment received by the Trust from the Times, and further seeking to have the court remove Hendler and Morty W. as trustees. He named as defendants the Trust, Troehler, Morty W., Hendler and Kahn, but did not name or notice the two remaining beneficiaries of the trust, Gloria W. and Hastings. On the return day of the order to show cause, after a *358 review of extensive written submissions by the parties, the trial court denied immediate relief for distribution of the $5,000,000 presumably deferring it for a plenary hearing. She also reserved decision on plaintiff's request for removal of the trustees, requiring the parties to file additional briefs. Thereafter, the trial judge conducted a telephone conference with the attorneys and some four days later rendered an oral decision in which she ordered the removal of Hendler and Morty W. as trustees of the liquidating Trust. (Subsequent to the filing of this suit Troehler resigned as a trustee). By subsequent order she directed the parties to take action to appoint a successor trustee in accordance with the provision of the trust agreement. That successor trustee ultimately was appointed and is presently conducting the business of the Trust, pending resolution of this appeal.
Notwithstanding the complex set of facts surrounding this litigation, the contentions of the parties and the issues presented are fairly simple and direct. Appellants Hendler, Morty W. and the Trust contend that the trial court erred in summarily removing them as trustees without having conducted a trial upon which to base a finding or findings that the trustees had in any way breached their fiduciary obligations or that their interest conflicted with those of the Trust or its beneficiaries. The hearing should have been conducted to determine the "existence (if any) of the alleged hostility or animosity, its substance, notice and extent" and "whether it interfered with the administration of the Trust." Without such an adjudication, they argue that a court may not properly remove them as trustees, no matter how hostile and bitter the parties feel toward one another. In other words, a trustee may not be removed absent "a finding of misadministration." Appellant Kahn generally joins in this position and additionally directs attention to the fact that two of the former shareholders of CSI, as beneficiaries of the Trust, were not joined as parties nor did they receive notice thereof.
*359 Plaintiff responds by asserting that it is not necessary to demonstrate that the trustees' hostile conduct has actually interfered with administration of the trust before a removal may be ordered. He contends that, in any event, misconduct was indisputably demonstrated and therefore the trial judge was correct in concluding that there was no genuine issue of material fact preventing her from summarily removing the defendant-trustees.
The trial court's reasoning in removing the trustees was read orally into the record in which she noted the "overwhelming evidence" of hostility existing between the parties as demonstrated by reference to the prior and pending litigation and the alignment of actors in that litigation. In particular she relied heavily upon the findings of Judge Dreier in the case where plaintiff had successfully sued the trustees to recover payment of his loans to CSI. She commented that "(a)lthough Judge Dreier's holding [alone] is sufficient basis for removal, " she did not "have to rely solely upon that decision either." She found that there were "(s)ufficient uncontroverted facts  presented to support the removal" even absent the result in that case. Relying primarily upon In re Koretzky, 8 N.J. 506 (1951) and Lister v. Weeks, 60 N.J. Eq. (15 Dick.) 215 (Ch. 1900), aff'd o.b. 61 N.J. Eq. (16 Dick.) 675 (E. & A. 1900), she applied as a standard that the conduct of a fiduciary toward the beneficiary causing animosity between them may properly invoke the court's exercise of discretion to remove a trustee. She found that, given the history of antagonism and adversity of the parties and their "privies," the trustees were in an "impossible position of conflict," and that the conflict was "so outrageous" that the trustees could not, under any circumstances, act in the required manner of loyalty to the interest of plaintiff as a beneficiary of the trust.
It is axiomatic that the most fundamental duty owed by a trustee to the beneficiary of a trust is the duty of loyalty. In re Koretzky, supra, 8 N.J. at 528. This duty is imposed on the *360 trustee independent of any trust provision because of the fiduciary relationship which arises from the creation of the trust. 2 Scott on Trusts, (3d ed. 1967), § 170 at 1297.
Long ago, it was recognized that,
The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever such a state of mutual ill-feeling growing out of his behavior, exists between ... the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent ... the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated. [Citations omitted.] May v. May, 167 U.S. 310, 320-321, 17 S.Ct. 824 [828], 42 L.Ed. 179, 184 (1897).
When the court is presented with an application for removal of a trustee, the matter is one which involves the exercise of sound discretion which will not be disturbed by an appellate tribunal in the absence of manifest abuse. 2 Scott, supra, § 107 at 840-841. Restatement, Trusts 2d, § 107 at 235 (1957). The broad inquiry sparked by such application is whether the circumstances are such that the continuance of the trustee in office would be detrimental to the trust and require the court to grant relief. Further, it is recognized that removal of a trustee should be granted only sparingly. 2 Scott, supra, § 107 at 841; Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165 (Ch. 1946).
The general rule is that mere friction or hostility between a beneficiary and a trustee is not necessarily a sufficient ground for removal. 2 Scott, supra, § 107 at 844; Annotation, "Hostility between trustee and beneficiary as ground for removal," 63 A.L.R.2d 523 (1959). If not, a beneficiary who otherwise lacks sufficient grounds for removal of a trustee could nevertheless compel that removal simply by instigating a fight. Ibid; Lister v. Weeks, supra, 60 N.J. Eq. at 215. Generally, in order for friction or hostility between the beneficiary and trustee to form the basis for removal, there must be a demonstration that the relationship will interfere materially *361 with the administration of the trust or is likely to do so. 63 A.L.R.2d, supra, at 525-526. 2 Scott, supra, § 107 at 845; McAllister v. McAllister, 120 N.J. Eq. 407 (Ch. 1936), aff'd 121 N.J. Eq. 265 (E. & A. 1937); Succession of Noe, 398 So.2d 1173, 1177 (La. App. 1981). This is particularly so if the hostility arises out of the misconduct of the trustee, but this does not mean that there necessarily must be a showing of bad faith on the part of the trustee. May v. May, supra, 167 U.S. at 320-321, 17 S.Ct. at 828, 42 L.Ed. at 184. In re Koretzky, 8 N.J. at 529.
In Koretzky the court was presented with an application to remove executors (trustees) of estates, based upon allegations of misconduct and conflict of interests. The evidence showed clearly that the fiduciaries indeed had made improper payments to themselves from the estates. The court there recounted a history of open animosity and conflict between the executors and beneficiaries arising out of the wrongful administration of the trusts and went on to comment,
There is authority to the effect that the conduct of a fiduciary toward the beneficiary of his trust causing mutual animosity between them may invoke the exercise by a court of equity of its power to remove a trustee. See May v. May, 167 U.S. 310 [17 S.Ct. 824], 42 L.Ed. 179 (1897); Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165 (Ch. 1946); McAllister v. McAllister, 120 N.J. Eq. 407, 420 (Ch. 1936), affirmed 121 N.J. Eq. 264 (E & A 1937); Lister v. Weeks, supra [60 N.J. Eq.], at p. 228. However, the mere fact that a beneficiary disagrees with a fiduciary's proper exercise of discretionary powers, or is resentful of the fiduciary's authority, or is antagonized by his personality, is not sufficient to cause his removal. Trust estates are created primarily for the protection of a beneficiary, against his own acts as well as those of others, and the authority which the creator of an estate places in a fiduciary may at times be unpleasant to a headstrong beneficiary. (In re Koretzky, supra, 8 N.J. at 530-531).
In Lister v. Weeks, supra, 60 N.J. Eq. at 215, cited in the Koretzky case, Vice Chancellor Stevens removed a testamentary trustee based on evidence of actual misbehavior. However, he also determined that there was "another ground upon which the trustee should be removed." Id. at 228. Recognizing the general rule that mere friction or hostility is not reason enough for removal, he observed that "where that hostility has arisen *362 out of the misbehavior of the trustee it may be." [Emphasis supplied]. Id. at 228-229. Thus he held that removal was warranted also because the hostility had developed to the point that the confidence of the beneficiaries had been destroyed and that the trustee could no longer work in harmony with them. Id. at 229. To the same effect was Application of Slocum, 274 A.D. 244, 80 N.Y.S.2d 801 (App.Div. 1948); In re Malone's Estate, 42 Colo. App. 353, 597 P.2d 1049 (1979); 2 Scott, supra, § 107 at 845; McAllister v. McAllister, supra, 120 N.J. Eq. at 407; Succession of Dunham, 393 So.2d 438, 454 (La. App. 1980), aff'd in part, rev'd in part, 408 So.2d 888 (1981).
More recently in Clark v. Judge, 84 N.J. Super. 35, 62 (Ch. Div. 1964), aff'd 44 N.J. 550 (1965), then Judge (later Justice) Pashman, in ordering removal of a trustee of an inter vivos trust, specifically noted that,
... A court may remove a trustee for acts done in breach of the trust or detrimental to the welfare of the trust, for lack of honesty or reasonable fidelity to the trust, for acts done which have diminished or endangered the trust, or even to protect the trust against possible future jeopardy. Taylor v. Errion, 137 N.J. Eq. 221 (Ch. 1945), affirmed 140 N.J. Eq. 495 (E. & A. 1947); Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165 (Ch. 1946); Restatement, Trusts 2d § 107. [Emphasis supplied].
Thus where the beneficiary asserts hostility, animosity, friction and malice as the basis for removal of a trustee, the court must determine not only the existence of such feelings but whether such a relationship has either resulted in actual acts of misconduct or has created a conflict of interest which appears likely to endanger the trust or the welfare of the beneficiary. A court need not wait until such misconduct has taken place or such conflict of interest has actually interfered with the fiduciary obligation, for as guardian of the trust, a court may remove a trustee where it finds that such action is warranted "to protect the trust against possible future jeopardy." Id. Matter of Guardianship of Brown, 436 N.E.2d 877 (Ind. App. 1982); 63 A.L.R.2d, supra, at 525-526; Fulton National Bank v. Tate, 363 F.2d 562, 571-572 (5th Cir.1966).
*363 The exercise of such discretion must be based upon consideration of all of the circumstances that have led to such disharmony, ill feelings and hostility. As noted, it requires a court to determine whether such an atmosphere has or will interfere with the proper administration of the trust and the interest of its beneficiaries. Ibid.; In re Kolbeck, 27 N.J. Super. 135 (App.Div. 1953). Accordingly, a court should consider the nature of the trust and objectives thereof, the powers and duties of the trustee, the necessity or desirability of collaboration between the parties, the origin or responsibility for the hostility and the extent to which discretion has been entrusted to the trustee which might adversely affect the rights or benefits of the beneficiary seeking removal. 76 Am.Jur.2d, Trusts, § 131 at 372; 63 A.L.R.2d, supra, at 526-527; Cooney v. Montana, 347 Mass. 29, 196 N.E.2d 202, 208 (1964). But compare Matter of the Estate of Malone, 42 Colo. App. 353, 597 P.2d 1049 (1979) where the court indicated that such an in depth inquiry need not be conducted.
In the instant case, there was a great deal of undisputed evidence that James Wolosoff and the trustees had engaged in bitter personal confrontations in legal arenas, characterized by sworn testimony centering on the integrity of the parties herein. Further, there was no real dispute that the future conduct of the parties would continue on a path of acrimony and discord if not outright distrust.
In reviewing whether the trial judge properly exercised her discretion in removing appellants as trustees, we are mindful that it implies conscientious judgment and not arbitrary action. In re Koretzky, supra, 8 N.J. at 535. Further, such discretionary action requires the trial judge to take account of the law applicable to the particular circumstances of the case under consideration. Should that judge misconceive the applicable law or misapply it to the factual complex, the result is an impermissible arbitrary act however conscientious the trial judge may have been. Higgins v. Polk, 14 N.J. 490 (1954); Kavanaugh v. Quigley, 63 N.J. Super. 153 (App.Div. 1960). A *364 review of the trial judge's conclusions here indicates that she correctly and fully expounded upon the applicable law as set forth above, notwithstanding the appellants' contentions suggesting otherwise.
Hence the only other issue for our consideration is whether the trial judge acted properly in removing the trustees in a summary manner pursuant to R. 4:67-5, the operative language of which is identical to the standard for consideration of motions for summary judgment pursuant to R. 4:46-2. Thus reliance on the principles of the summary judgment rule is appropriate.
As previously noted certain of the facts establishing the hostile atmosphere between the parties were not in dispute. The history of litigation and the findings of the courts in adjudicating those suits were before the trial judge. However, there were issues about which the parties were in serious disagreement. For example, plaintiff has charged that defendants had joined improperly with Kahn in the New York litigation against the Times to the detriment of the trust estate and that he had not been timely notified of that action. The defendant trustees deny that allegation and assert that joinder of CSI was essential to a proper discharge of their duties as trustees and to preserve the assets of the estate.
Plaintiff asserts that he is the largest beneficiary of the trust, and that the trustees' hostility and demonstrated propensities to deprive him of his due furnishes a clear basis for removal. Defendants counter by pointing out that the combined interests of Hendler, Morty W. and Gloria W. exceed plaintiff's interest and that any act of indiscretion depreciating or threatening the estate would affect them as well. In addition they urge that plaintiff was responsible for originating the feeling of animosity between the parties by attempting to unreasonably obstruct the sale of CSI and the filing of a specious federal "strike suit."
Plaintiff urges that Kahn, Hendler and Morty W. were engaged in an ongoing alliance with lawyers and other actors *365 calculated to deprive him of or to depreciate his interest in the trust estate. He contends that this was evidenced by their deliberate and calculated attempt to deprive him unlawfully of repayment of his loan to CSI which was the subject of the plaintiff's suit before Judge Dreier. Defendants' rejoin by denying the existence of any such conspiracy and asserting that Judge Dreier's adjudication of that lawsuit did not establish their misconduct as trustees and further, that plaintiff's behavior in that litigation was less than exemplary.
Plaintiff charges that defendant trustees have wrongfully withheld distributing to him his proportionate share of the $5,000,000 payment. Defendants assert that the trust provisions require them to do so and that their decision was made only after consultation with counsel. Any distribution, as plaintiff urges, might subject them to personal liability in the event the Times is successful in asserting their offset claims. They note that in withholding distribution, they too have not received their monies. Additionally, they correctly observe that this issue is yet to be litigated and has not been adjudicated or established in any manner in this action.
The trust here under consideration was created for a very limited purpose  to gain favorable tax treatment for the stockholders in conformance with Internal Revenue Code provisions. In that regard the powers, duties and obligations of the trustees are circumscribed in the trust agreement and should have been considered by the court. Yet, it appears that no assessment of this element was made by the trial court.
We make these observations realizing full well the pressure exerted on the trial court by the urgency and vehemence with which the allegations of the parties were presented and the undisputed facts suggested. Nonetheless, one must remember that an erroneous judgment removing the appointed trustees would have the effect of allowing plaintiff to defeat the vote of the majority of the CSI stockholders in setting up *366 the trust and their appointment of some of defendants as trustees. The now classic case of Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954) and its progeny have taught us, with good reason, that a summary disposition is no substitute for a plenary trial. Pressler, Current N.J. Court Rules, Comment R. 4:46-2 (1985). No legitimate purpose would be served here in reviewing the corollaries that have been spawned to assist the bench and bar in determining the correctness of summary judgment procedures. The status of the proofs in each individual case usually control that decision. Here the intensity and fact of hostility between the parties alone could not provide a proper basis for the court's summary order of removal. The trial court concluded that plaintiff "has sufficient cause to doubt the loyalty of the trustees to his interest," that the past litigation between the parties "place the trustees in an impossible position of conflict" and that "the trust is unlikely ... to proceed smoothly" and would result in "litigation of every single decision." In so doing she reached findings of fact based on disputed and contradictory allegations which should have been resolved at a plenary hearing.
Hence, in view of the disputed material allegations which remain unresolved, we believe that the interests of substantial justice require that we vacate the determination of the trial judge and remand the matter for a plenary hearing. At the conclusion thereof specific factual determinations may be made and a conclusion reached in accord with the legal principles set forth above.
On remand, the trial court will consider also whether the beneficiaries of the trust who have not been named in this lawsuit should be joined as party defendants (R. 4:28-1) or, at the very least, be given notice thereof so they may determine if they wish to intervene. R. 4:33-1 et seq.
Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.