TURNER vs. BOUCHELL's Ex'rs. and JESTER.

JUNE.

APPEAL from a decree of the Court of Chancery, *dismissing* the bill of complaint. The bill filed on the 7th of March 1797, by *John Turner*, and *Rachel* his wife, stated that *John Vansant*, father of *Rachel*, the female complainant, being seized and possessed of sundry tracts of land in fee simple, and possessed of the interest and term of years unexpired and then to come, of two leases for 80 years, of two *Grist Mills*, one lease dated the 21st of March 1744, and the other the 26th of April 1764, and having divers debts due to him on bonds, &c. amounting to £1654 13 0 current money, and being indebted to *Owen Jones*, and others, in the sum of £4681 1 8 current money, on bonds, he did, on the 1st and 3d of September 1766, execute to the said *Jones*, and others, a mortgage deed for all the said real property, except the parcels of leased lands, in order to secure to them, and the other creditors, the payment of the debts so due to them respectively; and he did at the same time assign the debts so due to him, and mortgage the said leasehold property to the said *Jones*, and others, for securing the debts so due from him, and did empower them to collect the said debts, and apply the same towards the discharge of the debts so due from him. [By these mortgages *Vansant* was to remain in possession of the lands, &c. and take the profits, &c. for five years, if he performed the covenant therein mentioned, by paying annually a certain part of the debt; and at the end of five years, or upon failure to pay, &c. (the debt or any part being unpaid,) *Jones* and others were to sell all the lands, &c. and apply the proceeds to

On a bill in chancery by R, the representative of J, deceased, to obtain from B a conveyance of certain tracts of land, which had been mortgaged or conveyed in trust, &c. in 1766 by J, to certain of his creditors, and by them conveyed to B, on receiving the balance of the mortgage debt;— *Held*, that the deeds of 1766, from J to his creditors, are to be considered as mortgages or deeds of trust made to secure the payment of money due to certain creditors of J; that the redeemable quality incident to mortgages, or the resulting use, was not extinguished or destroyed by the power vested in the deeds to sell the lands.

That B being the executor of J, and having compounded the debts due on the mortgages or deeds of trust, with the creditors of J, for a sum much below the value of the lands, should not take any benefit of the composition to himself; but any advantage resulting therefrom should devolve on the other creditors of the testator, and the right of the surplus, if any should remain after payment of the debts, should vest in his representative, upon the principle that he who accepts a trust takes it for the advantage of the persons for whom he is trusted, and not for his own.

The court of appeals having reversed the decree of the court of chancery, made a statement of the account between the parties, and decreed accordingly, and also decreed that the chancellor make and pass all necessary orders for carrying their decree into effect.

1810.

Turner
vs
Bouchell

payment of the debts, &c.] That *Vansant* remained in possession of the real and leasehold property so mortgaged, and enjoyed the profits and benefits arising therefrom until his death, which happened on the 1st of March 1773, having duly made his last will and testament, and thereby appointed his wife, and *Sluyter Bouchell*, executor and executrix. That the wife of *Vansant* did not take upon herself the execution of the will, but that *Bouchell* only took upon himself the execution thereof, and to him only letters testamentary thereon were granted. That the debts so due to *Vansant*, and by him assigned as aforesaid, were collected and applied to the discharge of the debts so due from him, and that *Vansant* had, during his life-time, made divers payments to *Jones*, and others, on account of the debts due to them, and the other creditors, and that there did not remain due to them, at the time of his death, more than about £1200 current money. That after the death of *Vansant*, his executor, *Bouchell*, obtained possession of the goods and chattels which were of *Vansant* at the time of his death, and which were not included in either of the said mortgage deeds, to the amount of more than £320 current money. That at the time of the death of *Vansant*, divers persons were indebted to him by bond, &c. to the amount of at least £1000 current money, over and above, and besides the debts so as aforesaid assigned; all which were or might have been received and collected by *Bouchell*, and for which he ought, as executor, to be accountable. That *Bouchell*, after the death of *Vansant*, took into his possession all the bonds, &c. which might prove the debts due to *Vansant*, and still has them, it is believed, in his possession. That *Bouchell* hath not yet rendered an account of his executorship, or settled any final account thereof, nor rendered any complete inventory or list of debts due to his testator, or of money by him received on account of the said debts. That on the 30th of June 1775, there being at that time the sum of £1200 still remaining due to *Jones*, and the other creditors, secured by the deeds of mortgage, *Bouchell*, the executor, paid the said sum to the said creditors, and took a conveyance to himself from *Jones*, and others, of the lands and tenements, fee simple, and lease-hold, so mortgaged to them. That *Bouchell*, immediately after the execution of the last mentioned deed, took possession of all the lands and tenements, with the

houses, mills, and other improvements thereon, which had been so mortgaged, and hath holden the same, and taken the profits thereof ever since. That the mother of the female complainant is dead, intestate, and that she is the sole heir and representative of *Vansant*, her father, and also of her said mother. That she was an infant when she intermarried with the other complainant. That the goods, &c. which were of *Vansant*, which came to the hands of *Bouchell*, and have been received by him, together with the rents and profits which have been received by him, and which have arisen from the mortgaged property since it has been in the possession of *Bouchell*, amounts to much more than the sum of £1200, so as aforesaid due, with all other debts due from *Vansant*, paid by *Bouchell*, and the interest thereon due; and therefore, that *Bouchell* ought not only to convey to the complainants the mortgaged premises, but also to account and pay over to them the balance which may be due to them of the personal estate, for which he is accountable as executor of *Vansant*, and out of the profits of the lands and tenements so conveyed to him, after paying the debts due from the estate of *Vansant*, including the sum of £1200 so paid by *Bouchell*, together with interest thereon. That *Jonathan Jester* now is, and for several years past has been, possessed of the lands and tenements which were so as aforesaid mortgaged, by virtue of a lease from *Bouchell* to him, *Jester*, subject to the annual rent of £110 current money; and that one year's rent is now due, and not yet paid, by *Jester* to *Bouchell*. The object of the bill was therefore to obtain from *Bouchell*, as executor of *Vansant*, an account of his administration of *Vansant*'s personal estate, and a payment of the balance which should appear to be due from him; another object was to obtain from *Bouchell* a conveyance to *Rachel*, one of the complainants, of the said tracts of land and grist-mills, which had been mortgaged by *Vansant* to *Jones* and others, as before stated, and by them conveyed to *Bouchell*, on receiving from him the balance of the mortgage debt; and another object was to compel *Jester*, to whom *Bouchell* had leased the lands, to account with the complainants for, and pay them, what rent is or shall be due from him for the lands so leased. *Bouchell* having died, a bill of revivor was filed against his executors. On the coming in of the answers of the executors of *Bouchell*, a commission was issued, and

testimony taken under it. By agreement between the par-
ties, accounts were stated by the auditor, to which both the
complainant and defendant excepted. The cause was ar-
gued by counsel.

HANSON, Chancellor, (June 1805.) It is to be remark-
ed, that before the equity of the case was argued, accounts
were stated by consent of the parties, in order, as it has
been said, that from the statement the chancellor might be
enabled to determine whether or not there was equity; that
is to say, as he supposes, whether or not there is any thing
due from the defendants to the complainants. But that
the complainants were entitled to an account, without a
previous statement, could not, he thinks, be doubted. It
is not necessary to prove that a man owes money, before
he shall be obliged to render an account of a trust. The
chancellor is clearly of opinion, that *Bouchell* should be
considered as the assignee of the mortgage given by *Van-
sant* to his creditors, or of the interest, whatever it was,
which the creditors, who are the grantees in the deeds by
him executed, derived from the said deeds.

Let it be supposed that the creditors, mortgagees or trus-
tees, had not conveyed the property to *Bouchell*, and that
a bill were filed against them for a redemption, or a sale of
the property under the direction of this court, can any
thing be more certain than that the terms of redemption
would be the payment of whatever should remain due after
crediting the payments made to the creditors, and the sums
received from the debtors of *Vansant*, contained in the list
mentioned in the deed, or with the whole amount of the
list, supposing the whole to be chargeable to them, with-
out proof of their actual receipt? Can it, on delibera-
tion, be conceived, that if the creditors and trustees,
or mortgagees, had conveyed their interest to a stranger,
they would thereby place *Vansant's* representatives in a
better condition than they were in before the conveyance?
Certainly not; and the representatives could not possibly
be entitled to a conveyance of the property until the debts,
for which it was pledged or conveyed, should be fully dis-
charged, nor could the representatives be entitled to any
part of the money arising from a sale under the authority
of this court, until the object for which the deeds were exe-
cuted should be fully obtained.

But *Bouchell* being *Vansant's* executor, and the creditors,
trustees or mortgagees, having conveyed to him, for the con-

sideration of £1200, it is contended, that he must be considered as having obtained the conveyance for the benefit of *Vansant's* representatives, he having, at the time of the conveyance, assets, after having paid all *Vansant's* debts, except those due to the creditors mentioned in the deeds of mortgage, sufficient to make the said purchase.

If the said creditors had due to them at that time only £1200, and it was their meaning, on the receipt of that sum, to release or restore the pledge, how improper was *their* conduct, as well as that of *Bouchell*; and how little interested could they be in acting as they did? Surely they ought to have conveyed the fee simple property *at least* to *Vansant's* heir, and this, as honest intelligent men, it is to be presumed, they would have done.

It is impossible to avoid the remark, that *Vansant* died in confinement, into which he was thrown on account of his debts, and that this was an event, not at all probable, supposing him to have been solvent at the time of his death. However, as the complainants are entitled to, and claim, an account, it is proper for the chancellor to direct it to be stated.—*Decreed*, that the defendants, as executors of *Bouchell*, account with the complainants; and that the auditor of this court state the account, charging *Bouchell* with the amount of the inventory, and the amount of the sperate debts by him returned, and with all other debts or things by him received, or the value thereof, and all debts legally proved to be due to *Vansant*, not barred by the act of limitations, which might have been received, and which, from gross negligence, were not received. On the other side, the auditor is to charge those debts due from *Vansant* which were paid by *Bouchell*, the debt or debts due from *Vansant* to *Bouchell*, the sum of £1200 which he paid to the creditors, mortgagees, and the sum which remained due to them after deducting the £1200, and the amount of the list of debts to them assigned, excluding such of the debts, if any there be, received by *Vansant* or by *Bouchell*. The auditor having stated the account or accounts, is to make his report to the chancellor, subject to exceptions, and be done with as to the chancellor shall seem just.

The chancellor thinks proper to remark on some of the authorities which have been cited. "An executor, purchasing an incumbrance, must be supposed to purchase in or-

der to protect the title for the representative of the testator." This is at least the full amount of one authority; but the chancellor presumes the rule or position to be confined to the case of an executor, "who has assets or money belonging to the estate, with which he purchases." If the executor has nothing in his hands, common sense must say, that he is on a footing with any other purchaser, who, by purchasing, places himself in the room of the mortgagee. "An executor purchasing with his own money, and giving the full value for the mortgaged land, shall not hold it as assets." The meaning of this is not plain. Suppose the executor does not give the full value—what then? The chancellor conceives the true rule to be, that an executor, if he has assets, is bound to clear a mortgage, and that if he purchases when he has assets, although he may pretend to purchase with his own money, he shall be considered as purchasing for the representative, or protecting his title, there being no other person to purchase or protect.

In the present case it appears to the chancellor, that *Bouchell*, at the time of his purchase, had not the money in his hands, or any part thereof. It appears too that it was the interest of *Vansant*, and the creditors, when he executed the deeds, that they should have a right to dispose absolutely of the property, in case the debts were not paid; and that at the time of their conveyance to *Bouchell*, neither party had an idea of his redeeming a mortgage by paying the balance of the debts, or of his purchasing for the benefit of *Vansant's* family. They might entertain erroneous ideas of the law, or of the principles of this court; but it must ever be the practice of this court to examine into the intention of parties; and although that intention may not be conclusive, it is at least a circumstance entitled to some influence, when aided by or coupled with other circumstances. Now the chancellor is satisfied, that at the time of the conveyance to *Bouchell*, the intent of the parties was, that he should take in his own right; that neither of them thought they were doing amiss; that the vendors thought they had an absolute right of disposal; that as executor, *Bouchell* was in no condition to purchase; that supposing him even to have a few hundreds as executor, it does not follow that making a purchase with 3, 4, 5, or 6 times the sum, he purchased for the heir. In short, *Bouchell* fairly stands in place of the mortgagees.

The account, stated by the auditor pursuant to the decree of the chancellor, made *Bouchell* a creditor to the estate of £9437 1 6. The complainants excepted to the account upon sundry grounds, which were stated.

HANSON, Chancellor, (December 1805). It is unnecessary to comment or decide on the exceptions one by one. It is impossible that, with the allowance of any exceptions which are entitled to allowance, a statement made conformably to the principles and directions of the decree, can make the defendants, who are executors to *Bouchell*, in debt to the complainants, or the estate of *Vansant*, under whom the complainants claim—a decree then against the other defendant, *Jester*, is out of the question. DECREED, that the bill of the complainants be dismissed, but without costs. From this decree the complainants appealed to this court.

The cause was argued at the last term before CHASE, Ch. J. BUCHANAN, NICHOLSON, GANTT, and EARLE, J.

*Martin* and *Key*, for the Appellants, raised four points —1. That the leasehold estate, and the personal property, should be included in the inventory. 2. *Bouchell*, being executor, entitled to equity of redemption, if he bought in he can charge no more than he gave; and he could only buy in as executor, and not for his own benefit. 3. That when the executor bought in, there was personal estate sufficient to pay the incumbrance, &c. without a sale of the leasehold property. 4. That the executor was answerable for all the debts due to the testator, unless he showed they could not be recovered, &c. On the *second point*, they cited *Anon.* 1 *Salk.* 155. *Whelpale vs. Cookson*, 1 *Ves.* 9. *Holt vs. Holt*, 1 *Cha. Ca.* 191. 2 *Fonbl.* 191; and *Ogle vs. Tasker*, (in the court of chancery before the revolution). And on the *fourth point*, they cited 14 *Vin. Ab.* tit. *Inventory.*

*Johnson*, (Attorney General,) and *Winder*, for the Appellees, cited 2 *Fonbl.* 191, 313, 414; and *Darcy vs. Hall*, 1 *Vernon*, 49.

The female appellant having died after the argument, her death was suggested.

*Curia adv. vult.*

THE COURT, at this term, in their opinion stated, that the deeds of the 1st and 3d of September 1766, from *Vansant* to *Jones* and others, are to be considered as mortgages, or deeds of trust, made to secure the payment of money due to certain creditors of *Vansant;* that the redeemable quality incident to mortgages, or the resulting use, was not extinguished or destroyed by the power vested in the deeds to sell the property.

That *Bouchell*, being the executor of *Vansant,* and having compounded the debts due on the mortgages or deeds of trust, with the creditors of *Vansant,* for £1200, a sum much below the value of the lands and premises, shall not take any benefit of the composition to himself; but any advantage resulting therefrom shall devolve on the other creditors of the testator, and the right to the surplus, if any shall remain after payment of the debts, shall vest in his representatives, upon the principle, that he who accepts a trust takes it for the benefit of the persons for whom he is trusted, and not to benefit himself. This is established on the soundest principles of equity, with the view of removing all temptation from the trustee to promote his own interest by violating his trust—*Decreed,* that the decree of the court of chancery be *reversed;* also decreed, that the appellees do by a good and sufficient deed, convey to *Turner,* the surviving appellant, the interest and term of years unexpired, and now to come, of a certain lease for 80 years of a certain *Grist Mill,* situate, &c. bearing date the 21st of March 1744; and also the interest and term of years unexpired, and now to come, of another certain lease for 80 years of a certain other *Grist Mill,* situate, &c. bearing date the 26th of April 1764. Also decreed, that the appellees deliver to the appellant full and peaceable possession of the interest and terms of years unexpired, and now to come, of and in the said leases for 80 years as aforesaid, of the said *Grist Mills* herein before mentioned to be granted as aforesaid. Also decreed, that the appellees, executors of *Bouchell,* do pay to the appellant the sum of £1626 16 5, current money, the said sum having been ascertained agreeably to the account hereto annexed; and that the appellees do also pay to the appellant the costs which accrued in the court of chancery, and in this court, and by the appellant expended and paid in the said courts, amounting to, &c. And also decreed, that the

chancellor make and pass all necessary orders for carrying this decree into full and complete effect.

The account referred to in the decree is as follows:

Dr. *Sluyter Bouchell* to the estate of *John Vansant.*

| | | | |
|---|---|---|---|
| To Amount of Inventory | £395 | 14 | 7 |
| To Shallop | 33 | 6 | 8 |
| To *Falconer's* two Judgments | 85 | 10 | 5 |
| To *Fountain's* debt | 2 | 15 | 0 |
| To Sperate debts | 161 | 16 | $0\frac{1}{2}$ |
| To Cash paid on lease | 40 | 0 | 0 |
| To Cash received for negro and for his hire | 160 | 0 | 0 |
| To Rent of the mill property from March 1773 to April 1775 at £50 | 100 | 0 | 0 |
| | £979 | 3 | $8\frac{1}{4}$ |

Supra      Cr.

| | | | |
|---|---|---|---|
| By *Vansant's* debt on bond to *Bouchell*, with interest to April 1, 1774 | 552 | 18 | 10 |
| By 5 years rent of the leased property in the state of *Delaware* | 305 | 0 | 0 |
| By commission on £655 18 10, at 10 per cent. | 65 | 15 | 10 |
| By balance due *Vansant's* estate | 55 | 9 | $0\frac{1}{4}$ |
| | £979 | 3 | $8\frac{1}{4}$ |

| | | | |
|---|---|---|---|
| To balance due *Vansant's* estate 1 April, 1775 | 55 | 9 | $0\frac{1}{2}$ |
| By this amount paid to the creditors, &c. | 1200 | 0 | 0 |
| | 1141 | 10 | $11\frac{1}{4}$ |
| By interest from 1 April 1775 to 3 Sept. 1783 | 576 | 19 | 6 |
| | 1721 | 10 | $5\frac{1}{4}$ |
| To rent of Mill property from 1 April 1775 to 4 July 1776 | 62 | 10 | 0 |
| | 1659 | 0 | $5\frac{1}{2}$ |
| By interest on £1144 10 $11\frac{1}{4}$ from 3 Sept. 1783 till 1 January 1784 | 22 | 17 | 9 |
| | 1681 | 18 | $2\frac{1}{4}$ |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| To rent of Mill property from 1 January 1781, when *Jester's* lease commenced, till January 1784 | 450 | 0 | 0 | | | | |
| To interest on £150 from 1 January 1782 to 1 January 1783 | 9 | 0 | 0 | | | | |
| To interest on £150 from 1 January 1783 to 1 January 1784, | 9 | 0 | 0 | | | | |
| | | | | 468 | 0 | 0 | |
| | | | | 1213 | 18 | 2½ | |
| By interest on £1144 10 11½ from 1 January 1784 till 1 January 1785 | | | | 68 | 13 | 5 | |
| | | | | 1282 | 11 | 7½ | |
| To one year's rent of Mill from 1 January 1784 to 1 January 1785 | | | | 150 | 0 | 0 | |
| | | | | 1132 | 11 | 7½ | |
| By interest on balance to 1 January 1786 | | | | 67 | 19 | 1 | |
| | | | | 1200 | 10 | 8½ | |
| To one year's rent of Mill to 1 January 1786, and so on for each and every year, until the 1 of January 1788, at £150, and afterwards to the 1 January 1800, at £110 per annum, crediting one year's interest on the balance due at the end of each year down to the 1 January 1800, leaving a balance then due to *Vansant's* estate of | | | | 102 | 8 | 1 | |
| To interest thereon from 1 January 1800 to 1 January 1810 (a). | | | | 61 | 8 | 4 | |
| To rent of Mill from 1 January 1800 to 1 January 1810, at £110 | | | | 1100 | 0 | 0 | |
| To interest on £110 from 1 January 1800 to 1 January 1810 | | | | 66 | 0 | 0 | |
| To do. on do. from 1 January 1801, and so on from every succeeding 1 January, until from 1 January 1809, to 1 January 1810 | | | | 297 | 0 | 0 | |
| | | | | £1626 | 16 | 5 | |

DECREE REVERSED, &c.

(a) This account was stated when the court were about to pass the decree at the last December term.