MARY E. POLK ET AL. *vs.* HELEN A. LINTHICUM.

*Trusts and Trustees—Removal of Trustee.*

An application by a *cestui que trust* for the removal of a trustee is addressed to the discretion of the Court.

The mere fact that a *cestui que trust* is not on good terms with the trustee is not in itself a sufficient reason for the removal of the latter.

A testator whose estate amounted to more than a million and a-half dol-

lars left surviving him a wife and and a son and daughter by a former marriage. His will gave to his wife his residence and its contents, one-half of his personal property for her life or widowhood and one-third of his real estate for life. One-half of the residue of his estate including the remainder after the widow's life estate he gave to his son absolutely and the other half of the residue he gave to his wife, his son and a trust company, co-trustees, in trust to pay the income to his daughter for her life, with the remainder to her son. Testator's attorney read and explained this will to the testator's wife in his presence and the latter asked her if she approved it and she replied that she did. After the testator's death she renounced the will and elected to take in lieu thereof her dower in the real estate and one-third of the personalty absolutely and by so doing took from the operation of the trust for the testator's daughter a large sum of money. About a year and a-half after the testator's death his widow married again. She not only did not remain on good terms with her step-children but all intercourse between her and them absolutely ceased and there was much litigation between them concerning the property of the estate. Upon an application for the removal of the testator's wife as one of the trustees of the estate, *held*, that under these circumstances and in view of the hostility existing between her and the *cestui que trust*, as well as her co-trustee, and of the fact that she thwarted the plans of the testator relating to the disposition of his estate, after having given her assent thereto, she should be removed from the trust.

Appeal from the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and JONES, JJ.

*James P. Gorter* and *H. Arthur Stump*, for the appellants.

*T. R. Clendinen* and *Enoch Harlan* (with whom were *J. Chas. Linthicum & Bro.* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This is an appeal from an order of the lower Court dismissing the petition of the appellant for the removal of the appellee from the trust created by the last will and testament of the late Gabriel D. Clark.

The decedent left surviving him a widow, the appellee in this case, and two children by a former wife; a son, Gabriel

D. Clark, Jr., and a daughter, Mary, who with her husband, Lucius C. Polk are the appellants.

By his last will, made in the year 1892, he distributed a large estate, except as to a small portion donated to certain charitable purposes, among the several members of his family. For his wife he made an ample provision; he gave her his residence and contents, and one-half of his personal estate, amounting to more than a million and a-half of dollars, for her life or widowhood, and one-third of the residue of his realty for life. All the residue of his estate, including that portion that might remain after the termination of the estate given to the wife for life or for widowhood, he divided among his son and daughter. The son took his share absolutely, but that of his daughter was given to his widow, his son and The Mercantile Trust Company of Baltimore in trust, to hold and manage the same and pay over the income thereof to Mrs. Polk, "into her hands and not into another," for her life, and from her death to his grandson, if he be then living, during his natural life, and then for the benefit of his child or children, until the youngest child shall have reached twenty-one years of age, when the trust is to close, and the property shall vest absolutely in the said children. In the event of his grandson dying without leaving child or descendant, the property is to go to the children of the testator's brother. He died on the 8th December, 1896, and in June, 1898, the Court assumed jurisdiction of the trust.

The appellee and the decedent were married in 1883. From the time of the marriage up to his death, it seems not to be questioned, their intercourse was harmonious and agreeable. From the period of Mr. Clark's death, there arose causes of estrangement between the widow and the children, which have brought about much bad feeling and broken up all the pleasant relations that may have theretofore subsisted between them.

We do not deem it necessary in the view we take of the case to enter into a discussion of the nature of these causes, nor to make any attempt to determine how far the suspicion

and distrust the children seem to entertain for the appellee may be justified by the circumstances as they are disclosed by the record. It will be sufficient to observe that in fact, ever since Mr. Clark's death, these causes have operated to bring about a most unfortunate state of bad feeling in the family, and to develop differences respecting the conduct of the trust which have kept the estate in constant litigation. The appellee it is true has testified that she has never entertained "one moment of ill will against one of them" (meaning Mr. Clark and his sister); and it may be conceded that the appellee has testified with entire candor and honesty. But notwithstanding this it seems improbable if not impossible that under all the circumstances of the case she can ever resume with them the kindly and sympathetic relations that existed during the lifetime of the testator, and are so necessary for the successful conduct of a trust like the one under this will. It may not unreasonably be assumed that the testator made selection of his widow not only because of his entire confidence in her judgment and integrity, but also because he knew of her satisfactory relations with Mrs. Polk. He must have sought not only that his daughter's share of his estate, should be wisely and honestly controlled but that her dealings with those managing the trust might be through the medium of the appellee whose affectionate solicitude for her comfort and welfare would soften to some extent at least the burden of having to submit to the will of others. These remarks are not intended as the statement of a sufficient ground for a removal; for the reason that it seems to be well settled that mere unfriendliness of the *cestui que trust* towards the trustee is not a sufficient ground *per se* for the removal of the latter. *Forster* v. *Davies*, 4 DeGex, Fisher & Jones, 139; *Wilson* v. *Wilson*, 145 Mass. 492. But these reflections we think enable us to approach the consideration of other features of the case in our judgment of more importance.

The last will of the testator was made and executed in the year 1892, four years prior to his death. It evinces a solicitude for the welfare of each member of his family as well as

an earnest desire to maintain an absolute equality among his children.  He intended it is true to guard the share of Mrs. Polk by means of the trust, for reasons of which we are not informed, but which we must assume were inspired by the expectation that it would operate for her benefit.  But he bestowed upon each of his children an equal share of the estate. To the widow he was extremely liberal.  He gave her a life interest in more than one-half of his estate.  It included the dwelling and contents and an income estimated by one of the counsel to amount to more than $50,000 per annum.  He seems therefore to have regarded the interest and probably the wishes of all the members of his family.  At the time he selected his widow as one of the trustees for his daughter, he must have believed that the agreeable relations between her and his children would continue to exist after he was gone. He probably did not anticipate that she would re-marry within less than a year and a-half after his death and thereupon would be broken up the home where they had so happily resided; nor that there would spring up so soon estrangements of serious character and far-reaching effect.  His object in joining her in the management of the trust could not have been to supply the business skill needed for the successful control of so large an estate; for that was already supplied by the other trustees.  What else could have been his motive but that there might be at his daughter's side, a safe, agreeable and sympathetic medium, through which she could convey her wishes respecting the trust estate to those that had it in charge?  Her position on the board of trustees seems to be an additional proof of the fact that he intended the trust estate primarily for the benefit only of his daughter to be enjoyed by her in the most agreeable as well as the most advantageous manner.  It is apparent also from the face of the will that the scheme of the testator was, after providing liberally for his widow, to so dispose of all his property, in such a manner that it should eventually go down in the line of his own blood.  The testimony also shows that he was exceedingly solicitous that his dispositions should be acceptable to his wife.  He trusted her,

talked with her about his will, read it to her, and she promised to do what he wished her to do. Mr. Snowden who prepared the will testified that after the will was executed, the appellee "was called into the parlor and Mr. Clark requested me to read it to her, which I did, very carefully and deliberately, and he asked her, if she understood it, and whether she approved of it, to which she replied that she did." Notwithstanding this solemn declaration on her part, she renounced the will and elected to take in lieu thereof her dower or legal estate. By this act she took out from the operation of the trust a very large amount, probably several hundred thousand of dollars, and diverted it to her own use. We are not now questioning in any manner her right thus to renounce, or what the moral aspect of the act may be when considered in connection with the statements and promises made by her to her late husband; but we regard it now only as a fact to be considered in connection with other matters, in relation to the trust. Moreover it appears from the record that less than one year and a-half after her husband's death she re-married and ceased not only to be on good terms with her step-children, but all intercourse of every kind with his family ceased. It is clear that by these acts, she destroyed a very important part of the scheme of the testator. His property has been diverted from the channel in which he desired it to go, and the trust has been depleted to the extent of many thousands of dollars.

Moreover the proof shows that her co-trustee, Mr. Clark, entertains feeling of such a positive character towards her that proper co-operation between them in the business of the trust has become impossible; and also that the beneficiary has become charged with distrust of her founded upon her dealings with the property of the testator, so that for the future there can no longer be personal relations between them. Finally whatever amount of blame may or may not attach to the appellee, if any, there can be no doubt her participation in the trust has for many years operated to keep the estate in litigation at much expense; and it is not unreasonable to expect

that if she remain there may be other recurring matters that will develop still further litigation for many years longer.

In addition to this, we think it is clear that the testator created this trust for the benefit of his daughter, and selected his wife to be one of the trustees not for her personal advantage but for that of the *cestui que trust.* His will ought and must be respected, but it is not for a moment to be even suspected that he would have appointed anyone for the performance of the duty of trustee for the benefit of his daughter, whose first act would be the depletion of the trust by renouncing his will, and thereby diminish the value of the trust estate and to that extent destroy his cherished, hopes and wishes, and afterwards having remarried, become so obnoxious to his children that they are unwilling to have dealings with her. These things show a want of fidelity to the wishes of the testator, and render the person so affected unfit to keep the financial prosperity of his daughter in her hands. In addition to this, we think it undoubtedly was Mr. Clark's desire that his daughter should not only receive her income promptly, but that she should be made comfortable in the reception of it as well as in its enjoyment. The mere fact of dissention between the *cestui que trust* and the trustee is not it is true a sufficient ground for the removal of a trustee, because, as was said in *Forster* v. *Davies*, 4 DeGex, Fisher & Jones, 139, a *cestui que trust* "might at any time raise a quarrel with the trustee and thereupon come to this Court to discharge the trustee and remove him from the trust upon the ground of the impossibility of their acting together." But it is also well settled that an application by a *cestui que trust* to remove a trustee is addressed to the reasonable discretion of the Court; and "requires a careful consideration of all the circumstances, the existing relations, and to some extent the state of feeling between the parties." *Scott* v. *Rand*, 118 Mass. 215. And so in *May* v. *May*, 167 U. S. 320, the Supreme Court said: "The power to remove a trustee and substitute another in his place is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever such a state of mutual

ill feeling, growing out of his behavior, exists between the trustees or between the trustee in question and the beneficiaries that his continuance in office would be detrimental to the execution of the trust, even if no other reason than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated." *Disbrow* v. *Disbrow*, 46 App. D. N. Y. 115, affirmed in 167 N. Y. 606; *Wilson* v. *Wilson*, 145 Mass. 490.

We do not rest our decision in this case upon the mere fact of inharmonious relations between the appellee and Mrs. Polk or between the appellee and her co-trustee; but we are of opinion that these and other facts stated in the record and particularly that she has placed herself in a position of hostility to the plans of the decedent whereby the trust fund has been materially depleted, convince us that she is not a proper person to longer act as a co-trustee of the fund and should therefore be removed.

> *Order reversed and cause remanded that an order may be passed removing the appellee from the trusteeship, the appellee to pay costs in this Court and below.*

(Decided March 23rd, 1905.)