GERTRUDE MANGELS *v.* RICHARD B. TIPPETT.
[No. 60, April Term, 1934.]

*Decided June 14, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John Holt Richardson,* for the appellant.

*Randolph Barton, Jr.,* with whom was *J. Royall Tippett* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

Bernard M. Mangels, late of Baltimore City, died on the 24th of December, 1931, leaving a last will and testament whereby, after making specific bequests of $5,000 to each of his three children, it was provided:

"I give and bequeath to The Safe Deposit and Trust Company and Richard B. Tippett in special trust and confidence, however, all of the capital stock that I may own of Mangels-Herold Company, Incorporated, at the time of my death, to hold the same for the use and benefit of my wife, Gertrude Mangels, for and during the term of her natural life, and to pay the income therefrom to my said wife, Gertrude Mangels, without power of anticipation; her own receipt at the time of the payment of any part

thereof to be the only necessary discharge and acquittance to said trustees, and from and after the death of my said wife, Gertrude Mangels, the stock that I may own of Mangels-Herold Company, Incorporated, at the time of my death, shall become the absolute property of my three children, namely: Walter B. Mangels, William H. Mangels and Ruth G. Wineholt, so that each of my said children shall be entitled to and receive a one-third part of said stock of Mangels-Herold Company, Incorporated. In the event of the death of any of my children before the death of my said wife, Gertrude Mangels, then the share of my child or children so dying, shall be paid to his, their or her child or children, share and share alike. It is my will, and I so direct, that the trust hereby created in said stock of Mangels-Herold Company, Incorporated, owned by me at the time of my death, shall cease immediately upon the death of my said wife, Gertrude Mangels, and it is further my will, and I so direct, that my said trustees shall not sell said stock of Mangels-Herold Company, Incorporated, or any part thereof without the written consent of my said wife and said three children, or the survivor or survivors of my said children, in the event any of my children shall die before my said wife. If, however, my said wife and said children shall direct in writing, my said trustees to sell said stock of Mangels-Herold Company, Incorporated, that I may own at the time of my death, then the purchaser or purchasers thereof from my said trustees shall not be required to see to the application of the purchase money or any portion thereof, and my said trustees are hereby empowered to re-invest the sum of money derived from the sale of the capital stock of Mangels-Herold Company, Incorporated, that I may own

at the time of my death, in such securities as they in their discretion may deem proper, and to change such investments from time to time as in their discretion may be required, and no purchaser or purchasers thereof from my said trustees shall be required to see to the application of the purchase money or any portion thereof, it being my desire, and I so direct, that my said wife, Gertrude Mangels, shall receive the net income from the stock owned by me at the time of my death of Mangels-Herold Company, Incorporated, for and during the term of her natural life or the income from any substitution thereof, and that said stock or any substitution thereof, immediately upon the death of my wife, shall be paid over by my said trustees to my children, or the child or children of any deceased child or children, share and share alike in accordance with the terms of this my last will and testament. All the rest and residue of my estate of every kind and description and wheresoever situate, I give, devise and bequeath to my wife, Gertrude Mangels, absolutely. I hereby appoint Richard B. Tippett and Sons as attorneys for my executrix hereinafter named, to perform all legal services for my executrix pertaining to the administration of my estate, and I hereby direct my executrix to consult said Richard B. Tippett and Sons as to all legal matters pertaining to my said estate. I hereby constitute and appoint my wife, Gertrude Mangels, to be the executrix of this my last will and testament."

At the time of the testator's death, he owned 1,250 shares of the capital stock of Mangels-Herold Company, of the par value of twenty-five dollars per share, the total capital stock of said company being 2,500 shares, the other 1,250 shares being owned by John H. Herold. The business of this corporation was that of refining syrup

and molasses and making sale of same. It had been organized principally through the efforts of the testator, and the testator and Herold were the exclusive owners of all of the stock, which, as stated, was owned equally by the two. The company was unusually successful up until the death of the testator, and continued this success even through the period of depression to the present time. In accordance with the by-laws of the corporation, there were three directors, consisting of Bernard M. Mangels, John H. Herold, and J. W. Suter. The officers of the company were Mangels as president, and Herold, as secretary-treasurer, each of whom was paid a salary of $15,000 per annum, after which a dividend of six dollars a share was paid to the stockholders, the balance of the net profits was each year added to the surplus of the company, to be used as working capital.

After the death of Mangels, his widow, as executrix of the will, qualified and settled the estate through the Orphans' Court of Baltimore City. The 1,250 shares, the subject of the trust created by the will, were appraised in the inventory at $100,000, and, after the settlement of the estate, to wit, in August, 1932, were transferred by the executrix into the hands of the Safe Deposit & Trust Company and Richard B. Tippett, the two testamentary trustees. The annual meeting of the stockholders of the company, succeeding the death of Mr. Mangels, was held on January 12th, 1932, at which meeting all of the stock of the company was represented and voted, 1,250 shares being voted by Herold, and 1,250 shares being voted by the estate of Bernard Mangels through Richard B. Tippett, who held a proxy from the executrix. At that meeting three directors were elected; namely John H. Herold, Richard B. Tippett, and Arthur E. Reinheimer. At the conclusion of this stockholders' meeting, the new directors of the company held a directors' meeting for the election of officers; whereupon, on motion of Richard B. Tippett, John H. Herold was elected president and treasurer, and upon motion of Mr. Herold, Mr. Tippett was elected secretary of the company, for the ensuing year. The sal-

ary of Herold, as president and treasurer, was fixed at $15,000 per year, payable in monthly installments of not more than $1,200 a month; and the salary of Tippett, as secretary, was fixed at $50 per week, payable weekly. The company functioned for the year 1932 under the aforementioned board of directors and officers, which resulted in profits for the year of approximately $35,000. From this amount there appears to have been deducted the salaries of the officers, amounting to $17,600, an income tax of between $4,000 and $5,000, and a sum sufficient for the payment of a dividend of five dollars a share, or twenty per cent., being the rate of dividend declared by the board of directors, and subsequently paid. The balance of the profits, following what had been the usual practice of the company, was added to the surplus. The annual stockholders' meeting for 1933 was held in January of that year, all of the stock being present and voting, the Mangels stock, which had theretofore been turned over to the trustees named in the will, being voted by the trustees, Richard B. Tippett, and John J. Nelligan, representing the Safe Deposit & Trust Company. The same directors who had been elected in the stockholders' meeting of January, 1932, were re-elected. Upon the adjournment of this stockholders' meeting, there was held a directors' meeting at which it appears from the record Mr. Nelligan, upon request, was present; and the same officers, with the same salaries, were duly elected.

It appears that Richard B. Tippett had been the counsel for the corporation from the time of its inception to the death of Bernard M. Mangels; that he also prepared the will of Mr. Mangels, and his firm were, by the will, appointed attorneys for the executrix, and the executrix directed to consult them as to all legal matters pertaining to the estate. It further appears that, after Mr. Tippett became a director of the company, he advised the widow and children of the deceased testator that in his judgment it would be unwise to keep the whole trust estate in the stock of the company, and advised them to sell the stock to John H. Herold for the sum of $105,000, which

had been offered for same by Herold, and invest the proceeds in six per cent. ground rents, which he thought the trustees would be able to secure; Tippett giving as the reason for this advice the fact that it was practically a one-man business corporation, managed almost exclusively by Mr. Herold as president and treasurer and owner of one-half of the capital stock, and if anything should happen to Herold, the business of the company, in his judgment, would not continue to be successful, and that the whole of the trust estate should not be represented by such an investment. Mr. Nelligan, representing the Safe Deposit and Trust Company, the cotrustee (although there is some contradiction in the record as to this), thought well of Mr. Tippett's suggestion as to the sale of the stock, and called a meeting at his office in the Safe Deposit & Trust Company of the widow and children of Bernard M. Mangels, who under the terms of the will had to consent in writing to the sale of the stock. This meeting was held in November, 1932, the two trustees, the three children, and the widow being present. At that meeting the children refused to sell, and nothing more came of Tippett's suggestion in that respect.

There is considerable testimony in the record as to whether or not Mrs. Mangels knew of the appointment of Mr. Tippett as secretary of the company at a salary of fifty dollars per week, for a year or more after he had been so appointed. Again, there is some contradiction on the point, but the record satisfactorily establishes that they did not learn of such appointment for approximately the time stated after it was made, and then through Mr. Nelligan, representing the cotrustee.

This being the condition, the widow and children, on May 10th, 1933, filed their petition in the Circuit Court of Baltimore City, wherein they prayed that that court assume jurisdiction of the trust created by the will of Bernard M. Mangels, and advise and direct the Safe Deposit & Trust Company of Baltimore and Richard B. Tippett, trustees thereunder, in the further administration of the trust and in the exercise of the powers vested in

them as trustees. The trustees answered this petition, alleging that it was not necessary for the protection of the parties that the court administer the trust, but assenting to the passage of a decree by which the court assumed jurisdiction and required the trustees to file their bond in the penalty of $5,000 for the faithful performance of the trust.

Subsequently, Gertrude Mangels, the appellant, filed her petition setting forth the facts substantially as heretofore related, and further alleging that the company's net income for the year 1932 was in excess of $35,000; that, although the trust estate is the owner of fifty per. cent. of the capital stock, there was only paid as her share of the profits for the year 1932 by the trustees the sum of $6,250, from which was deducted the sum of $312.50 as their commission; that the petitioner, feeling that she was entitled to know the condition of the trust estate, as well as what disposition was made of the profits of the corporation in the year 1932, made inquiry of the trustees for the desired information, but that the trustees have failed to inform her in the matter; that in July, 1933, she repeated this request, through her counsel, but received no reply from the trustee; that, before the court assumed jurisdiction, one of the trustees, Richard B. Tippett, without the knowledge or consent of the petitioner, had himself appointed as secretary of the company, and that he could not have been so appointed without voting the stock of the trust estate for that purpose; that by virtue of his appointment as secretary he is now drawing from the company the sum of fifty dollars weekly, which salary he has been drawing for more than a year; that, as the trust estate is the holder of fifty per cent. of the capital stock of the company, the trust estate is charged with and pays fifty per cent. of the salary of Tippett as secretary; that his services as secretary are only nominal, without any value whatever to the trust estate; that the petitioner believes that the trust estate is not being administered to her advantage; that under the circumstances she cannot have that friendly

relation with Tippett as trustee which should exist between trustee and *cestui que trust*. The prayers are that Richard B. Tippett be removed as trustee, and be required to account to the trust estate for such sums as he may have received from the company as representing the trust estate.

This petition was answered by the appellee Richard B. Tippett, the pertinent parts of which answer are that he alleges that he was elected secretary of the company at a regular meeting of the directors called for the purpose of electing officers, which was one of the exclusive duties of the corporation, which had the right to elect a secretary and was required to do so under the by-laws of the corporation; that it was the exclusive business of the company, in the exercise of its corporate powers, to elect its officers, and the board of directors did elect its officers, and did elect the secretary and fix his compensation at the meeting, as it had the exclusive right to do; that the salary of fifty dollars per week was fixed by the directors and paid by the corporation; denies that the trust estate is charged with payment of said salary, but says that the same is part of the usual and ordinary expenses of the company, and that he has rendered valuable services to the company; that he has performed his duties as trustee to the best of his ability, and has always consulted the welfare and interest of the trust estate with the cotrustee.

Testimony was taken in open court and disclosed the facts hereinbefore set forth. The chancellor passed a decree or order on January 5th, 1934, dismissing the petition of the appellant; from which action the appeal here is taken.

We find nothing in the record which would require or justify the court in removing Mr. Tippett as cotrustee. The testator named him as trustee, and, in addition, requested that his wife, the executrix, consult with and be advised by him in the settlement of the estate, thereby displaying full confidence in his ability and integrity. The trust estate consisted of fifty per cent. of the stock in

Mangels-Herold Company; and the election of one of the cotrustees as a director of that company would seem to be not only proper, but the best means of protecting the estate and rendering the fullest measure of service thereto. It may be true that the *cestui que trust* and Mr. Tippett are not at present on the most pleasant terms; but that fact does not afford justification for or require his removal as cotrustee. It must be remembered that he is not the sole trustee, but must act after consultation and in conjunction with the cotrustee, the Safe Deposit & Trust Company. As was said by this court in *Polk v. Linthicum*, 100 Md. 615, 60 A. 455, 457; "The mere fact of dissension between the *cestui que trust* and the trustee is not, it is true, a sufficient ground for the removal of a trustee, because, as was said in *Forster v. Davies*, 4 De Gex, Fisher & Jones 139, a *cestui que trust* 'might at any time raise a quarrel with the trustee, and thereupon come to this court to discharge the trustee and remove him from the trust upon the ground of the impossibility of their acting together.' But it is also well settled that an application by a *cestui que trust* to remove a trustee is addressed to the reasonable discretion of the court, and 'requires a careful consideration of all the circumstances, the existing relations, and to some extent the state of feeling between the parties.' *Scott v. Rand*, 118 Mass. 215. And so in *May v. May*, 167 U. S. 320, 17 S. Ct. 824, 828, 42 L. Ed. 179, the Supreme Court said: 'The power to remove a trustee and substitute another in his place is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever such a state of mutual ill feeling, growing out of his behavior, exists between the trustees or between the trustee in question and the beneficiaries that his continuance in office would be detrimental to the execution of the trust, even if no other reason than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated.' *Disbrow v. Disbrow*, 46 App. Div. 115, 61 N.

Y. S. 614, affirmed in 167 N. Y. 606, 60 N. E. 1110; *Wilson v. Wilson,* 145 Mass. 490, 14 N. E. 521."

In *Polk v. Linthicum,* this court reversed the lower court and remanded the cause that an order might be passed removing the appellee as trustee. The law therein stated, as to the court's right and duty to remove a trustee, under proper circumstances, we fully approve and agree with. But the court there made it clear that the inharmonious relation between the trustee and the *cestui que trust* was not the circumstance upon which the decision rested, but upon the whole record in the case, and particularly that the trustee there placed herself in a position of hostility to the plans of the decedent, whereby the trust fund had been materially depleted. The facts in the case now before us are so materially different from those in *Polk v. Linthicum* that it is no authority which would justify the removal of Mr. Tippett as cotrustee, unless on the single fact that the trustee and the *cestui que trust* are unable to act harmoniously, and that fact, as we have shown, and as is clearly established by *Polk v. Linthicum,* is not sufficient.

The relief prayed for here, in addition to the removal, is an accounting by the trustee for the money which he received as secretary of the corporation. This question is governed by a broad and most salutary equitable principle, which may be thus stated: that a trustee, or one acting in a fiduciary capacity, is not permitted to place himself in such position that the interest of the beneficiary and his own personal interest do or may conflict; and the question of whether or not such a position has resulted in a benefit or loss to the beneficiary is not permitted to be inquired into. In *Perry on Trusts and Trustees* (7th Ed.) section 427, it is said: "Trustees hold a position of trust and confidence. The legal title of the trust property is in them, and generally its whole management and control is in their hands. At the same time the beneficiaries of the trust may be women or children or persons incompetent to protect their own interests. For these reasons, to protect the weak and helpless on the

one hand, and to prevent trustees from using their position and influence for their own gain, and to prevent them from hazarding the trust property upon what they may think to be profitable speculations, on the other, they are not allowed to make any profit from their office. They cannot use the trust property, nor their relation to it, for their own personal advantage. All the power and influence which the possession of the trust fund gives, must be used for the advantage and profit of the beneficial owners, and not for the personal gain and emolument of the trustee. No other rule would be safe; nor would it be possible for courts to apply any other rule, as between trustee and *cestui que trust*. A trustee will not be allowed to retain for himself a profit made from his dealings with trust property, although he is able to show that the profit was not made at the expense of the trust." See, also, *Jarrett v. Johnson*, 216 Ill. 212, 74 N. E. 756; *White v. Sherman*, 168 Ill. 589, 48 N. E. 128. In *Lewin on Trusts and Trustees*, p. 275, the author states: "It is a general rule established to keep trustees in the straight line of their duty that they shall not derive any personal advantage from the administration of the trust property"— citing many English cases and authorities which uniformly support the text. In *Pomeroy's Equity Jurisprudence* (4th Ed.) vol. 3, section 1077, in speaking of this principle, it is said: "This rule is of wide application, and extends to every variety of circumstances. It rests upon the principle that as long as the confidential relation lasts the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original *cestui que trust*. The rule applies alike to agents, partners, guardians, executors and administrators, directors and managing officers of corporations, as well as to technical trustees. The most important phase of this rule is that which forbids trustees and all other fiduciaries from dealing in their own behalf with respect to matters involved in the trust, and

302

this prohibition operates irrespectively of the good faith or bad faith of such dealing. It is therefore a gross violation of his duty for any trustee or director, acting in his fiduciary capacity, to enter into any contract with himself connected with the trust or its management; such a contract is voidable, and may be defeated and set aside at the suit of the beneficiary."

In *Michoud v. Girod*, 4 How. 503, 555, 11 L. Ed. 1098, the Supreme Court of the United States, nearly a hundred years ago, stated: "The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. * * * In Maryland, the courts of chancery carry out the rule to the fullest extent of the principles upon which it is founded, and as they have just been stated." The court there was dealing with the question of a trustee purchasing at his own sale; and the principle there invoked and applied is the same general principle which is now before us.

In *Hoffman Coal Co. v. Cumberland Coal & Iron Co.*, 16 Md. 456, in discussing this doctrine, this court, speaking through Chief Judge Le Grand, said: "The necessity of good faith—and that free from suspicion, as far as practicable—between the principal and agent, is the main pillar of support to the doctrine; the necessity of it underlies all the decisions. Remembering the weakness of humanity, its liability to be seduced, by self-interest, from the straight line of duty, the sages of the law inculcate and enjoin a strict observance of the divine precept: 'Lead us not into temptation.' * * * This doctrine, which is applicable to trustees, applies also to purchases by persons acting in any fiduciary capacity, which imposes upon them the obligation of obtaining the best terms for the vendor, or which has enabled them to acquire a knowledge of the property. The authorities supporting it are

numerous and uncontradictory." In *Gaither v. Myrick*, 9 Md. 118, at page 143, and *Ricketts v. Montgomery*, 15 Md. 46, at page 51, the language of Lord Ellenborough in *Thompson v. Havelock*, 1 Campbell, 527, is quoted and adopted with approval, that "no man should be allowed to have an interest against his duty"; and in the *Ricketts* case the court adds: "He certainly should not, by his own act, voluntarily create such an interest." In *Keighler v. Savage Mfg. Co.*, 12 Md. 383, it is said: "In the final decision of this case, the law governing the relation of principal and factor, is to be applied to the dealings of the parties. What that law is—so far as this case is concerned—we shall, as concisely as may be, state. Its paramount and vital principle is good faith; without it the relation of principal and agent cannot exist; and so sedulously is this principle guarded, that all departures from it are esteemed frauds upon the confidence bestowed. Almost any number of cases might be cited to support this declaration, but such a labor would be but an unprofitable employment of time, inasmuch as all that can be usefully noticed, has been in a very clear manner brought together by Sugden, in his work on *Vendors and Purchasers*, by Justice Story, in his commentaries on *Equity Jurisprudence*, and in the decisions of the Supreme Court of the United States. In these compilations we have, without unnecessary verbiage, the relative duties of principal and agent distinctly defined. There is no discordance between them; but, on the contrary, perfect harmony."

In *Turner v. Bouchell*, 3 H. & J. 99, it is said: "This is established on the soundest principles of equity, with the view of removing all temptation from the trustee to promote his own interest by violating his trust." In *Conway v. Green*, 1 H. & J. 151, it is said: "The chancellor earnestly wishes it understood that, in his opinion, no rule of this court, adopted for the prevention of fraud, ought to be relaxed; but that, on the contrary, rules against fraud ought to be as strict as possible. He has known more than one instance where a trustee has openly

purchased, and there was no reason to doubt the fairness of his conduct, and yet this court would not ratify the sale. It would not establish a precedent, for this plain reason, that, if such sales were allowed, there would be practiced frauds impossible to be detected, as indeed are more than nine in ten of the frauds which are perpetrated." This principle, as recognized and applied by the English court, is so stringent that Lord Eldon once sent a case to a master to inquire whether the privilege of sporting on the trust estate could be left for the benefit of the *cestui que trust;* if not, he thought the game should belong to the heir; the trustee might appoint a game keeper for the preservation of game for the heir, but he ought not to keep up a lodge for his own pleasure. So, where a trustee retired from the office in consideration that his successor paid him a sum of money, it was held that the money so paid must be treated as a part of the trust estate, and that the trustee must account for it, as he could make no profit, directly or indirectly, from the trust property or from the position or office of trustee. *Sugden v. Crossland,* 3 Sm. & Gif. 192.

It will be seen that the authorities, without distinction, recognize, approve, and apply this doctrine in every case where a person in a fiduciary position permits his self-interest to be in conflict with the interest of the beneficiary. The experience of the human race has fully demonstrated the truth of the divine precept that no man can serve two masters; and the courts, recognizing that self-interest is among the strongest, and perhaps a natural, motive for action promoting self-gain or aggrandizement, have adopted a principle or doctrine which prevents the effectiveness of any such motive when it comes in conflict with the interest of a *cestui que trust.*

The question in this case is: "Does the record show a state of facts which violates this firmly established doctrine? It is fair and just to say that this record is barren of evidence showing bad motive, or any willful purpose to deplete or injure the trust estate. But Mr. Tippett has placed himself in a position which, if occu-

pied by one actuated by evil, selfish, or malignant purposes, could result in personal profit at the expense of the beneficiary. By virtue of the stock belonging to the estate, and held by himself and his cotrustee, he is elected a director of the corporation. It is apparent that the management of the corporation is within the control of two directors, Mr. Herold representing one-half of the stock, and Mr. Tippett the other half; and it is true that his position as secretary at a salary of fifty dollars a week is dependent upon his directorship, growing out of the trustee-ownership of the stock. It is of no concern whether or not the services rendered be fully worth the salary received. It still remains true that that personal benefit to him is derived by virtue of his trusteeship. There can be no question that the net return to the estate is lessened by one-half of the amount of the salary received by Mr. Tippett as secretary; and he is in a situation, as trustee, to use such position for personal gain at the expense of the estate. We find no evidence in this record which indicates that his services as secretary have been overpaid, or that any other person occupying that position would not be entitled to and receive as much or more salary. But, as stated, this can have no influence upon the application of the principle here invoked. He might as easily have demanded and received a very much larger salary, in return for voting an unreasonable salary to Mr. Herold, the president and treasurer; and it is apparent that his self-interest and the interest of the estate which he represents as trustee may conflict, to the detriment of the estate. We desire to make it clear that we find no evil intention, purpose, or design on the part of Mr. Tippett; but the facts show a case governed by the principle laid down by the authorities, and, if that is to be maintained in its full force and integrity, we feel compelled to apply it to the present facts. The case of *Dailey v. Wight*, 94 Md. 269, 51 A. 38, relied on by the appellees, is distinguishable in the facts. There the trustee, holding the position of president of the corporation, was possessed in his individual capacity of one-third of

the stock, and controlled a majority, exclusive of that held as trustee; and it was this fact, together with evidence of acquiescence and ratification, which was stressed by the court in that case.

Our conclusion upon the whole case is that there is no violation of this principle in a trustee holding stock in a corporation, preventing him from becoming a director therein, but that he should not become a salaried officer or employee of the corporation, that the record does not call for or warrant a removal of Mr. Tippett as trustee, but that the appellant is entitled to an accounting of the salary received by Mr. Tippett as secretary of the corporation from the time he was first so appointed, and the payment of one-half of such an amount so found to the appellant, without interest. The views herein expressed require a reversal of the decree or order appealed from.

> *Decree or order reversed, and case remanded for a decree in accordance with the views herein expressed, with costs to the appellant.*