**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3023-23

IN THE MATTER OF THE
FRIBERG FAMILY 2016 TRUST.

_____

Submitted September 10, 2025 – Decided January 16, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000410-22.

Goldstein Law Group, LLC, attorneys for appellant Keith Friberg (Mark Goldstein and Jared Goldstein, of counsel and on the briefs).

Archer & Greiner, PC, attorneys for respondent Robert Friberg (Andrew J. Cevasco, of counsel and on the brief; Heather B. Roth, on the brief).

PER CURIAM

In a case involving a trust established by his mother Barbara Friberg, defendant Keith Friberg appeals from an order and an amended order granting a summary-judgment motion filed by his brother, plaintiff Robert Friberg, and an

order denying his reconsideration motion.[1]  Perceiving no error or abuse of discretion by the trial court, we affirm.

I.

In an August 8, 2016 irrevocable trust agreement, Barbara, as grantor, created the Friberg Family 2016 Trust (Trust).  In the trust agreement, Barbara relinquished the right "to alter, amend, revoke or terminate this [t]rust [a]greement and the trusts created hereby."

As set forth in the trust agreement, Barbara granted two properties to the Trust.  One property was located in Little Silver, New Jersey; the other was located in Singer Island, Florida.  Barbara retained a life estate in the properties.  Consistent with the trust agreement, on August 8, 2016, Barbara signed deeds in the presence of a New Jersey notary transferring ownership of the properties to the Trust.  The deed for the New Jersey property was recorded on September 28, 2016; the deed for the Florida property was recorded on December 29, 2016.

Barbara named her two sons, Robert and Keith, as trustees and beneficiaries of the Trust.  The trust agreement provided that "[w]hile there are two [t]rustees serving hereunder, all decisions shall be unanimous."  The trust

---

[1]  Because of the shared last name of the Friberg family members, we refer to them by their first names for clarity.  We intend no disrespect by doing so.

agreement required the trustees "to designate one of their number as the [m]anaging [t]rustee to handle day-to-day and ministerial responsibilities for the Trust." Under the trust agreement, "[m]ajor actions, such as entering into a contract to purchase or sell real property, . . . require[d] all [t]rustees then serving to join in such action." The trust agreement named Robert as the managing trustee. The trust agreement also provided it would be governed by the laws of the State of Florida. According to the trust agreement, on Barbara's death, the Trust would terminate and the trustees were required to distribute "the principal and any undistributed and accumulated income remaining in the Trust to [Barbara's] then living issue, per stirpes . . . ."

Barbara and Robert executed the trust agreement on August 8, 2016, in New Jersey. According to the lawyer who had prepared the trust agreement, Keith refused to sign the trust agreement if Robert were the managing trustee. On September 15, 2016, Robert renounced in writing his appointment as managing trustee. The renunciation stated: "[t]he effect of this renunciation is that all actions of the trustees must be made jointly by the trustees, until such time as they decide to appoint one of them as [m]anaging [t]rustee . . . ."

The record contains two documents dated December 8, 2016, that Barbara apparently signed and addressed "To Whom It May Concern." In one document,

she appointed Keith as the managing trustee of the Trust. That document provided that Keith "as [m]anaging [t]rustee [could] exercise his power unilaterally with no input required from the [t]rust [b]eneficiaries." In the other document, Barbara "gift[ed] the residence in Florida to Keith" and stated Keith "at his discretion . . . [could] determine whether to keep in family trust if Robert . . . agrees to share in expenses ([t]axes and HOA [f]ees) upon Keith['s] purchase of a house." Keith executed the trust agreement on December 8, 2016.

On April 4, 2022, Barbara passed away. According to a HUD-1 Settlement Statement,[2] "Keith Friberg, Trustee of the Friberg Family 2016 Trust," sold the New Jersey property on August 31, 2022, yielding $856,592.19 in net proceeds. On that day, $856,592.19 was wired into a TD Bank account Keith had opened in the name of the Trust, with himself listed as trustee. By September 12, 2022, the account had a balance of $200. Documents subsequently obtained from TD Bank indicate funds from the Trust account had been transferred to Keith's personal account at TD Bank on various dates in September 2022. Those records also show the amounts of $700,000 and

---

[2] "A HUD-1 is a standard real estate settlement form that the Real Estate Settlement Procedures Act requires in connection with all mortgage loans that are covered by federal law." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA, 795 F.3d 380, 403 (3d Cir. 2015) (citing 12 U.S.C. § 2603).

$145,000 were wired from Keith's personal TD Bank account to an account at a brokerage firm, respectively on September 6 and 12, 2022.

In a September 12, 2022 letter to Keith, Robert's counsel demanded "an immediate release to [Robert] of one half of the sale proceeds." Counsel contended Robert did not have access to the account into which the sale proceeds had been deposited. Counsel stated that if Keith did not release the funds by September 16, 2022, he would file an application for an order to show cause seeking Keith's removal as trustee.

In a verified complaint filed on November 4, 2022, Robert alleged the proceeds from the sale of the New Jersey property had been delivered to Keith's control without Robert's knowledge or approval; the December 8, 2016 document in which Barbara purportedly appointed Keith as the managing trustee was null and void because Barbara had relinquished the right to amend the irrevocable Trust when she created it; and Keith's retention of the proceeds from the sale of the New Jersey property had violated the terms of the Trust. Robert asserted Keith had breached his fiduciary duty, had engaged in unlawful conversion and fraud, and had been unjustly enriched. He sought entry of an order to show cause and removal of Keith as trustee, delivery of the proceeds of the sale to be held and distributed pursuant to the terms of the trust agreement,

an accounting of Keith's actions as trustee, compensatory and punitive damages, and counsel fees.

The trial court entered an order to show cause on November 28, 2022, requiring Keith to respond by January 11, 2023.[3] On January 9, 2023, Keith, representing himself, moved for an extension of time. On January 25, 2023, he moved to dismiss the complaint and the order to show cause for lack of jurisdiction and improper venue.

On February 10, 2023, the court entered an order denying Robert's request to remove Keith as trustee; barring any distribution of the proceeds of the sale of the New Jersey property absent a court order; and requiring Keith to provide a formal accounting of the Trust within sixty days, informal accountings of the Florida property and expenses and the "claimed expenses" for the New Jersey property within thirty days, and information regarding the location and account where the proceeds from the sale of the New Jersey property were being held. The court scheduled a case management conference to be held on April 3, 2023.

On February 15, 2023, Robert's counsel sent a copy of the order to Keith by email and regular mail. That same day, Keith recorded in Florida a quit claim

---

[3] The order actually references "January 11, 2022," but, in context, the court clearly meant January 11, 2023.

6

deed regarding the Florida property. According to the deed, Keith, as trustee, had sold the property to Keith, individually, for $10. He also filed a warranty deed regarding the property, indicating he, as trustee, had conveyed the property to himself, individually, for one dollar.

On April 17, 2023, Robert's counsel submitted a certification in support of an application for an order to show cause. In his certification, counsel described the TD Bank records showing the transfer of the funds out of the Trust's account and asserted Keith had failed to reveal the true location of the sale proceeds as required by the February 10, 2023 order. The court entered an order on May 1, 2023, directing Keith to show cause why the court should not enter an order that, among other things, removed him as trustee, required him to deposit the sale proceeds in the Trust's TD Bank account or with Robert's counsel, and execute a deed conveying the Florida property back to the Trust. On June 5, 2023, the court entered an order continuing its prior restraints and requiring Keith within ten days to execute a deed conveying title of the Florida property back to the Trust and to deliver to Robert's counsel a check in the amount of the sale proceeds payable to the attorney trust account of Robert's counsel's firm.

On June 28, 2023, Robert moved for an order holding Keith in contempt pursuant to Rule 1:10-3 for failing to comply with the June 5, 2023 order; removing Keith as a trustee; and suppressing Keith's answer pursuant to Rule 4:23-5(a) for failure to provide discovery or, alternatively, compelling him to provide discovery responses pursuant to Rule 4:23-1(a). On October 27, 2023, the court entered an order finding Keith in contempt for failing to comply with the June 5, 2023 order, requiring him to comply with that order and to provide discovery responses within twenty days, providing he would be assessed monetary sanctions if his noncompliance with the June 5 order continued, and awarding counsel fees.

On November 22, 2023, Robert moved for summary judgment, contending he "ha[d] . . . demonstrated beyond a reasonable doubt that [Keith] has taken the net proceeds of the sale of [the New Jersey property] - $856,592.19 from [the Trust]" and "deeded to himself title to [the Florida property]." In a supporting certification, Robert's counsel advised the court that "[t]o date, [Keith] remains in violation of the June 5 [o]rder and has failed to comply with the October 27 order." He argued, "[t]here cannot be a more obvious and irrefutable case for [s]ummary [j]udgment than the present one." According to Robert's counsel, on November 21, 2023, his firm sent Keith a link to a file containing the motion

papers by email and copies of the papers by regular mail. In a December 11, 2023 email, the Surrogate's Office advised the parties the court would conduct a status conference on December 19, 2023, and scheduled argument on the summary-judgment motion for December 22, 2023.

In a December 15, 2023 letter, Robert's counsel advised the court he had received that day "a message from a friend of Keith . . . indicating that Keith is incarcerated in the Palm Beach County Jail" and asking counsel to request an adjournment of "these matters." Counsel also informed the court he had "verif[ied] online that Keith . . . was arrested on December 12, 2023," though he was not sure Keith "in fact remain[ed] incarcerated." Counsel opposed Keith's adjournment request. The court adjourned the conference to January 23, 2024, and the argument of the motion to January 26, 2024.

In a January 23, 2024 letter, Robert's counsel informed the court that, in response to an inquiry from the Surrogate's Office, he had contacted the Palm Beach County Sheriff's Office and was told Keith had been released from custody and was under "in-house arrest," where he had "no restrictions as to internet access." Counsel asked the court to hear argument on the motion on January 26 as previously scheduled and to allow Keith to participate by Zoom. The next day, the Surrogate's Office advised the parties the court had adjourned

argument to February 9, 2024, and that if Keith had an issue appearing in person, he had to request "alternative accommodations" by January 31, 2024.

On February 2, 2024, Keith moved for an extension of time. In a typed but unsigned document, Keith made the uncertified statements that he had been incarcerated, was "currently under [h]ouse-[a]rrest," could not travel to New Jersey, and did not have "access to the Internet in order to do [a] hearing via Zoom Call."

In orders and a statement of reasons entered on February 9, 2024, the court denied the extension motion and granted the summary-judgment motion. The court concluded Keith had not demonstrated "[g]ood cause" for the extension, finding his opposition to the summary-judgment motion was due before his arrest, he had failed to "perfect" his extension motion because he had not signed it, and his unsworn assertion that he did not have access to the internet was belied by his ability "to draft and serve an application to extend time." Viewing the summary-judgment motion as unopposed, the court nevertheless considered the evidence submitted in support of the motion, including portions of the transcript of Keith's deposition testimony, and held it demonstrated Keith had violated his fiduciary duties as trustee, specifically referencing his transfer of

10

the Florida property and the proceeds of the sale of the New Jersey property to himself and his failure to comply with court orders.

In a February 9, 2024 Order for Final Judgment, the court: granted summary judgment in favor of Robert; entered judgment against Keith in favor of the Trust in the amount of $856,592.19, reflecting the proceeds of the sale of the New Jersey property; entered judgment against Keith in favor of Robert in the amount of $5,700, reflecting the monetary sanctions established for Keith's failure to comply; authorized Robert to execute on Keith's behalf deeds and other documents necessary to re-convey the Florida property to the Trust; removed Keith as trustee; directed Keith to file a formal accounting with the court as to his administration of the Trust within sixty days; and awarded Robert counsel fees and costs he had incurred in the case, the amount of which the court would determine after his counsel submitted an affidavit of services. In a March 5, 2024 amended order, the court awarded Robert an additional $112,882.33, reflecting his counsel fees and costs.

On March 26, 2024, Keith moved to vacate and for reconsideration of the March 5, 2024 order. Citing Rule 4:49-2 and paragraphs (d) and (f) of Rule 4:50-1, Keith contended the judgment was voidable "on jurisdictional grounds" and that the court had failed to allow him to present a defense to the motion. In

11

a certification, Keith asserted, among other things, that Barbara had intended to leave him 62.5% of her estate and that she or her estate owed him "hundreds of thousands of dollars" for expenses he had paid on her behalf. He conceded he had transferred the Florida property from the Trust to himself, claiming Barbara had said on her death bed she wanted him to have it. He denied receiving the summary-judgment papers from Robert's counsel but acknowledged he had "received a notice directly from the [c]ourt indicating there was a court date." He asserted he remained under house arrest with unspecified "limited access and resources" but did not repeat his prior uncertified statement that he did not have access to the internet.

After hearing argument, the court on May 3, 2024, entered an order with a comprehensive attached rider denying the motion. The court found Keith had failed to meet the applicable standards to vacate the order under Rule 4:50-1 or for reconsideration under Rule 4:49-2. The court rejected the argument regarding improper service, finding Keith clearly was aware of the motion given that he had requested an adjournment, which the court granted. Citing the multiple adjournments of the summary-judgment motion, Keith's submission of the extension motion, and his failure to explain the purported limitation of resources during house arrest, the court concluded Keith had had "ample

opportunity to respond" to the summary-judgment motion.  Characterizing it as a "third bite of the apple," the court rejected Keith's jurisdictional argument, noting the court already had rejected the argument on February 6, 2023, and October 27, 2023,[4] and that the court "has consistently found extensive contacts" supporting the court's jurisdiction.  Finally, the court found the facts concerning the alleged breach of fiduciary duty – Keith's unilateral transfer of the Florida property and the proceeds of the sale of the New Jersey property to himself – were "uncontroverted," entitling Robert to summary judgment.

On June 3, 2024, Keith filed a notice of appeal from the February 9, 2024 and March 5, 2024 summary-judgment orders and the May 3, 2024 reconsideration order.  Keith argues the trial court abused its discretion in refusing to grant him additional time to respond to the summary-judgment motion and in removing him as trustee.  He asserts the court exceeded its powers by authorizing Robert to execute deeds for the Florida property.  He contends the court erred in granting summary judgment because material issues of fact exist.  In response, Robert argues, among other things, that this court should not consider Keith's untimely appeal of the summary-judgment orders and should

---

[4]  The appellate record does not include copies of transcripts from any 2023 court proceedings.

affirm the reconsideration order because the trial court did not abuse its discretion in denying the reconsideration motion.

## II.

"[A]ppeals from final judgments of courts . . . shall be filed within [forty-five] days of their entry."  Brehme v. Irwin, 259 N.J. 505, 512 (2025) (quoting R. 2:4-1).  "[A]n order granting summary judgment and disposing of the case is a final judgment . . . ."  Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 n.8 (2010).  A motion for reconsideration under Rule 4:49-2 tolls the time to file an appeal.  R. 2:4-3(e); Eastampton Ctr., LLC v. Planning Bd. of Eastampton, 354 N.J. Super. 171, 187 (App. Div. 2002).  The "remaining time" to appeal the summary-judgment order begins to run again "from the date of the entry of an order disposing of [the reconsideration] motion."  R. 2:4-3(e).

The court entered the amended order granting summary judgment on March 5, 2024.  Defendant filed the reconsideration motion twenty-one days later on March 26, 2024; thus, at that time, defendant had only twenty-four days of "remaining time" to file an appeal of the summary-judgment order.  The court entered the order denying the reconsideration motion on May 3, 2024.  Thirty-one days later, defendant filed the notice of appeal on June 3, 2024.  Because defendant did not file his appeal within the twenty-four days he had remaining,

his appeal of the summary-judgment orders was untimely. But even considering the summary-judgment arguments Keith made in his reconsideration motion, we conclude he failed to establish a genuine issue of material fact that would defeat the summary-judgment motion and the court did not abuse its discretion in denying the reconsideration motion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (reviewing a trial court's order regarding a reconsideration motion under an abuse-of-discretion standard).

When reviewing summary-judgment orders, we apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). Under that standard, a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 244 N.J. 189, 199 (2016)). A genuine issue of material fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier

of fact." Gayles, 468 N.J. Super. at 22 (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "If 'the evidence is so one-sided that one party must prevail as a matter of law,' summary judgment is proper." Meade v. Twp. of Livingston, 249 N.J. 310, 327 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (internal quotation marks omitted).

In this case, the evidence Keith presented in his reconsideration motion did not demonstrate the existence of a genuine issue of material fact. In the certification, Keith asserted Barbara, on her death bed, had told her sons she wanted Keith to have the Florida property "as part of the estate settlement." But the Florida property by then was a Trust asset. Barbara already had conveyed the Florida property to the Trust, in a deed she executed on August 8, 2016, and had recorded in Florida on December 29, 2016, after she purportedly signed the December 8, 2016 "To Whom It May Concern" document.

In the certification he submitted in support of the reconsideration motion, Keith asserted Barbara had intended to leave him 62.5% of her estate. But that assertion does not change the terms of the trust agreement executed by Barbara, which provided that on her death, the trustees were required to distribute the Trust principal and accumulated income to her "then living issue, per stirpes."

16

Keith does not dispute that, instead of following that provision of the trust agreement, he distributed 100% of the Trust assets to himself.

In so doing, as the trial court found, Keith breached his fiduciary duties as trustee. A trustee "plainly owe[s] a fiduciary duty to the beneficiaries of . . . the trust . . . ." In re Est. of Folcher, 224 N.J. 496, 511 (2016). "[T]he most fundamental duty owed by a trustee to the beneficiary of a trust is the duty of loyalty." Wolosoff v. CSI Liquidating Tr., 205 N.J. Super. 349, 359-60 (App. Div. 1985). Consequently, a trustee cannot act "contrary to the legitimate interests and expectations of the beneficiaries," Coffey v. Coffey, 286 N.J. Super. 42, 53 (App. Div. 1995), use trust money or property for his or her personal benefit, In re Koretzky's Est., 8 N.J. 506, 528-29 (1951), or make "an inordinate profit from his fiduciary position . . . ," Silverstein v. Last, 156 N.J. Super. 145, 151 (App. Div. 1978).

In addition to his factual assertions, Keith made other legal and procedural arguments in support of his reconsideration motion. Even though his friend had contacted Robert's counsel in December 2023 to request an adjournment of "these matters," a fact Keith did not dispute in his certification, Keith asserted in the reconsideration motion he had not been properly served with the summary-judgment motion. Even accepting that assertion as true, Keith failed,

though given the opportunity to do so in his reconsideration motion, to demonstrate the existence of any genuine issue of material fact that would serve to defeat the summary-judgment motion.

Keith faulted the trial court for denying his February 2, 2024 motion for an extension of time. The court already had adjourned the motion twice, once after granting the request for an adjournment made by Keith's friend on his behalf and once after learning Keith had been released from custody and was under "in-house arrest." Keith did not support the factual assertions he made in his unsigned motion with a certification and, in filing the motion, he demonstrated his access to a computer and ability to prepare and submit papers with the court. On that record, we perceive no abuse of discretion in the court's denial of the extension motion. See State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013) (reviewing a trial court's denial of an adjournment request under an abuse-of-discretion standard).

Keith argued in his motion for reconsideration and again argues on appeal that the court had "improvidently exercised jurisdiction over the trust property located in the State of Florida." Characterizing the argument as a "third bite of the apple," the trial court explained it had rejected it previously on February 6, 2023, and October 27, 2023, because it found "extensive contacts" supporting

the court's jurisdiction. The appellate record does not contain copies of transcripts of those proceedings, but the existence of undisputed facts supporting the court's jurisdiction are readily apparent.

Keith challenges the court's ability to authorize Robert to execute deeds regarding the Florida property. But, when Robert filed this lawsuit, the Florida property was owned by a Trust created in New Jersey pursuant to a trust agreement and deeds executed in New Jersey by Barbara, who was a New Jersey property owner. It remained a Trust asset until, during the pendency of this lawsuit, Keith unilaterally sold the property to himself for ten dollars or less according to the deeds he executed. Under those facts, we perceive no error by the court in authorizing Robert to execute deeds concerning the Florida property given Keith's breach of his fiduciary duties. Cf. Rector v. Rector, 62 N.J. 577, 580 (1973) (finding court overreached its jurisdiction by requiring modification of terms of a trust established and administered in another state by trustees who, unlike Keith, had not engaged in any fiduciary activities in New Jersey); see Starr v. Berry, 25 N.J. 573, 588-89 (1958) (citing Restatement (First) of Conflict of Laws § 243 (1934)) (finding claims of fiduciary-duty breaches do not fall within the ambit of section 243 of the Restatement of Conflict of Laws, which

19

indicates the administration of a land trust is governed by the state where the land is).

Keith relies on the Florida law paragraph in the trust agreement. That language, however, addresses choice of law; it is not a forum-selection clause. See Wilfred MacDonald Inc. v. Cushman Inc., 256 N.J. Super. 58, 67 (App. Div. 1992) (enforcing a contractual clause that required any cause of action to be filed in a court located in Nebraska). The choice-of-law provision in the trust agreement did not deprive the court of jurisdiction or limit its ability to issue orders protecting the assets of the Trust and the interests of its beneficiaries. Wolosoff, 205 N.J. Super. at 360 (acknowledging a court's "paramount duty to see that trusts are properly executed") (quoting May v. May, 167 U.S. 310, 320-32 (1897)).

Keith argues on appeal the court abused its discretion by removing him as trustee of the Trust. New Jersey statutory and case law provide for the removal of a trustee under certain circumstances. "A court may remove a trustee for acts done in breach of the trust or detrimental to the welfare of the trust." Wolosoff, 205 N.J. Super. at 362 (quoting Clark v. Judge, 84 N.J. Super. 35, 62 (Ch. Div. 1964), aff'd, 44 N.J. 550 (1965)); see also N.J.S.A. 3B:14-21(c) (authorizing courts to remove a fiduciary who has "embezzled . . . or misapplied any part of

20

the estate committed to his custody, or has abused the trust and confidence reposed in him"); N.J.S.A. 3B:14-21(b) (authorizing courts to remove a fiduciary who has neglected or refused to obey a court order); N.J.S.A. 3B:31-71(b)(7) (authorizing courts to remove a trustee as provided in N.J.S.A. 3B:31-51 to remedy a trustee's breach of trust or violation of a duty owed to a beneficiary).

Keith contends that as managing trustee he was vested with "significant discretion." That discretion, however, did not include, contrary to the terms of the trust agreement and his fiduciary obligations, authorization to unilaterally transfer from the Trust to himself the Trust's only assets, the Florida property and the proceeds of the sale of the New Jersey property, the value of which exceeds the "out-of-pocket expenses" to which he claims entitlement. Based on that record, we perceive no abuse of discretion in the court's removal of Keith as trustee.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

21